**Lynn J. HUBBARD; Barbara J. Hubbard, Plaintiffs,**

v.

**7–ELEVEN, INC. et al., Defendants.**

**No. 04 CV 2409 L(POR).**

United States District Court, S.D. California.

March 9, 2006.

Lynn Hubbard, III, Scottlynn J. Hubbard, IV, Steve Wedel, Law Offices of Lynn Hubbard, Chico, CA, for Plaintiff.

Julie Rae Trotter, Call Jensen and Ferrell, Newport Beach, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LORENZ, District Judge.

This matter comes before the Court on Defendant 7–Eleven, Inc. dba 7–Eleven # 2021–20785's Motion for Summary Judgment. The Court finds the motion suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d)(1).

### *THE AMERICANS WITH DISABILITIES ACT ("ADA")*

" 'Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals.' " *Fortyune v. Am. Multi–Cinema, Inc.,* 364 F.3d 1075, 1080 (9th Cir.2004) (quoting *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 674, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001)). Plaintiffs' federal claim arises under Title III of the ADA, which prohibits discrimination against disabled individuals in any place of public accommodation. 42 U.S.C. § 12182(a). "Discrimination includes the failure to remove 'architectural barriers' in existing facilities where such removal is 'readily achievable.' " *Parr v. L & L Drive–Inn Restaurant,* 96 F.Supp.2d 1065, 1070 (D.Haw.2000); 42 U.S.C.

§ 12182(b)(2)(A)(iv). When an entity demonstrates removal of architectural barriers is not readily achievable, discrimination includes the "failure to make such facilities available through alternative methods if such methods are readily achievable." *Parr*, 96 F.Supp.2d at 1070; 42 U.S.C. § 12182(b)(2)(A)(v).

■ "The ADA grants a private right of action for injunctive relief to, inter alia, 'any person who is being subjected to discrimination on the basis of disability.'" *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir.2000) (quoting 42 U.S.C. § 12188(a)(1)). To state a claim under Title III based on the presence of architectural barriers in an existing facility, a plaintiff must allege and prove that: "(1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." *Parr*, 96 F.Supp.2d at 1085.

■ The Department of Justice has adopted ADA Accessibility Guidelines ("ADAAG"), codified in 28 C.F.R. Pt. 36, App. A as part of its ADA Title III standards.[1] *Fortyune*, 364 F.3d at 1080. "These standards lay out the technical structural requirements of places of public accommodation and are applicable 'during the design, construction, and alteration of such buildings and facilities' ... under the [ADA]." *Id.* at 1080–81 (quoting 28 C.F.R. Pt. 36, App. A) (alterations in original). Although the ADAAG guidelines do not apply to facilities existing before the ADA's effective date, they "provide valuable guidance for determining whether an existing facility contains architectural barriers." *Pascuiti v. New York Yankees*, 87 F.Supp.2d 221, 226 (S.D.N.Y.1999).

## BACKGROUND

Plaintiffs Lynn J. Hubbard and Barbara Hubbard are in their 80s and suffer from multiple conditions that affect one or more major life functions.[2] Both Plaintiffs at times require the use of a wheelchair and a mobility-equipped vehicle while traveling in public.[3] On three occasions in 2003, the Hubbards visited the 7–Eleven convenience store ("the Store") located at 2400 Highland Avenue, National City, California.[4] In addition to those visits, Plaintiffs estimate they have visited that store approximately two or three times per month during the last year.[5]

Plaintiffs filed this action on December 1, 2004 under the ADA and state law against 7–Eleven, Inc. d.b.a. 7–Eleven # 2021–20785 ("7–Eleven") and John P. Thompson alleging Plaintiffs encountered several architectural barriers at the Store. Plaintiffs attached to their Complaint a Preliminary Site Accessibility Report. (Compl.¶ 10, Ex. A.)

Through discovery, Plaintiffs learned Defendant Thompson is deceased and that 7–Eleven Employee Profit Sharing Foundation is the new owner/operator of the Store. By stipulation and order dated June 23, 2005, the parties agreed Plaintiffs would dismiss the action without prejudice as to Thompson and name 7–Eleven Em-

1. Defendant requests the Court take judicial notice of relevant portions of the ADAAG. The Court finds they may be judicially noticed under Federal Rule of Evidence 201, and the request is GRANTED. Insofar as Defendant requests the judicial notice of documents the Court has not relied upon in this order, Defendant's request is DENIED AS MOOT.

2. L. Hubbard Decl. ¶¶ 1–2; B. Hubbard Decl. ¶¶ 1–2.

3. L. Hubbard Decl. ¶ 1; B. Hubbard Decl. ¶ 1.

4. Trotter (09/16/05) Decl. Ex. D, Pls.' Resp. to Interrogs., Resp. No. 5.

5. *Id.*

ployee Profit Sharing Foundation as a Defendant. (Dock. No. 9.) Plaintiffs filed a First Amended Complaint on September 14, 2005. The First Amended Complaint's allegations are virtually unchanged from the original Complaint, with the exception that Plaintiffs no longer allege a negligence cause of action. (*Compare* Compl. *with* First Am. Compl.) The Preliminary Site Accessibility Report attached to the First Amended Complaint is identical to the one attached to the original Complaint. (*Compare* Compl. Ex. A *with* First Am. Compl. Ex. A.)

On September 16, 2005, 7–Eleven moved for summary judgment arguing, *inter alia,* that as of September 16, 2005, it had remedied all the deviations from state and federal disability standards, including the barriers identified by the Plaintiffs. This remediation was performed as part of a program implemented in 2003 for assessing, upgrading, and remediating 7–Eleven stores nationwide to ensure compliance with state and federal accessibility laws ("Accessibility Upgrade Program"). 7–Eleven's summary judgment motion was scheduled for hearing on October 17, 2005. Plaintiffs' counsel submitted a declaration requesting the Court deny the summary judgment motion under Federal Rule of Civil Procedure 56(f) to allow Plaintiffs' expert the opportunity to conduct a site inspection of the premises and determine whether the ADA violations he previously identified had in fact been removed. In an order dated September 28, 2005, the Court found good cause to hold 7–Eleven's motion in abeyance to allow Plaintiffs' expert to conduct another site inspection and for the parties to meet and confer. The parties were directed to file a joint brief on or before October 24, 2005 advising the Court whether they had reached a resolution of this case or whether disputes remained and 7–Eleven's motion had to be placed back on the Court's calendar.

On October 21, 2005 the parties met and conferred at the site, and thereafter submitted a joint brief indicating they continued to disagree over the accessibility of the Store. By order dated November 14, 2005, the Court scheduled 7–Eleven's summary judgment motion to be heard on January 9, 2005 and directed the parties to file their opposition and reply briefs in accordance with the Civil Local Rules based on the January 9, 2005 hearing date.

### LEGAL STANDARD FOR SUMMARY JUDGMENT MOTIONS

Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material when, under the substantive governing law, it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. If the moving party does not have the burden of proof at trial, it may carry its initial burden by "produc[ing] evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of

its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir.2000). When the moving party bears the burden of proof on an issue—whether on a claim for relief or an affirmative defense—the party "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in its favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986); *see S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party fails to discharge its initial burden of production, summary judgment must be denied and the court need not consider the nonmoving party's evidence, even if the nonmoving party bears the burden of persuasion at trial. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Nissan Fire*, 210 F.3d at 1102–03. When the moving party carries its initial burden of production, the nonmoving party cannot "rest upon mere allegation or denials of his pleading." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the non-movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (internal quotations omitted); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Nissan Fire*, 210 F.3d at 1103.

A "genuine issue" of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). When ruling on a summary judgment motion, the court cannot engage in credibility determinations or weighing of the evidence; these are functions for the jury. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir.2002). The court must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1180 (9th Cir.2002). The court is not required "to scour the record in search of a genuine issue of triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996) (internal quotations omitted), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir.2001).

## DISCUSSION

7–Eleven moves for summary judgment as to Plaintiffs' claims on the basis they have been mooted by 7–Eleven's remediation as part of its Accessibility Upgrade Program and alternatively, because Plaintiffs have not been deterred from visiting the Store notwithstanding the existence of the barriers. Before the Court turns to the merits of Plaintiffs' claims, a threshold issue that must be resolved is Plaintiffs' standing. Plaintiffs maintain they have standing to seek removal of all barriers that relate to their disabilities because the ADA mandates complete, not piecemeal compliance. To the contrary, 7–Eleven contends Plaintiffs only have standing to seek removal of the barriers they encountered or had knowledge of prior to filing their Complaint.

A necessary element of Article III's "case" or "controversy" requirement is that a litigant must have " 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1152 (9th Cir.2000). The "irreducible constitutional minimum" of Article III standing has three elements. *LSO*, 205 F.3d at 1152 (internal quotations omitted). First, the plaintiff must have suffered "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations and quotations omitted); *Fortyune*, 364 F.3d at 1081. Second, the plaintiff must show "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.' " *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)) (alterations in original); *accord Fortyune*, 364 F.3d at 1081. Third, it must be "likely," and not merely "speculative," that the plaintiff's injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130; *Fortyune*, 364 F.3d at 1081.

Plaintiff, as the party invoking federal jurisdiction, has the burden of proof and persuasion as to the existence of standing. *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130; *Fortyune*, 364 F.3d at 1081. Standing is measured at the time the complaint is filed. *Lujan*, 504 U.S. at 569 n. 4, 112 S.Ct. 2130. Although at the pleading stage general factual allegations of injury resulting from the defendant's conduct may suffice to establish standing, at the summary judgment stage they are not. *Dep't of Commerce v. United States House of Representatives*, 525 U.S. 316, 329, 119 S.Ct. 765, 142 L.Ed.2d 797 (1999); *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130. Rather, on a motion for summary judgment, "a plaintiff must establish that there exists no genuine issue of material fact as to justiciability or the merits." *Dep't of Commerce*, 525 U.S. at 329, 119 S.Ct. 765. Accordingly, a plaintiff must support its allegations of injury by affidavit or evidence of specific facts. *Snake River Farmers' Ass'n, Inc. v. Dep't of Labor*, 9 F.3d 792, 795 (9th Cir. 1993).

The injury-in-fact element is determined by the facts in existence at the time the plaintiff filed the lawsuit. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 170, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *Martinez v. Longs Drug Stores, Inc.*, 2005 WL 2072013, at *3 (E.D.Cal. Aug.25, 2005). To meet the "concrete and particularized" prong of the injury-in-fact element, "the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n. 1, 112 S.Ct. 2130; *accord Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 (9th Cir.2002). In the ADA context, the Ninth Circuit has "underst[oo]d that to mean that [the plaintiff] must himself suffer an injury as a result of the [ ] store's noncompliance with the ADA." *Pickern*, 293 F.3d at 1137. A plaintiff suffers an injury in fact from ADA noncompliance if he personally encounters the barrier complained of, or he has actual knowledge of the barrier complained of and has been deterred from visiting the public accommodation because of that bar-

rier. *Id.* at 1137–38; *Martinez,* 2005 WL 2072013, at *3; *Steger,* 228 F.3d at 892.

In *Steger,* the Eighth Circuit held that a blind plaintiff whose use of restroom was prevented because of inadequate signage had standing to challenge other violations in defendant's building that could injure blind persons. *Steger,* 228 F.3d at 893–94. Plaintiffs contend the Ninth Circuit adopted *Steger*'s reasoning in *Pickern.* Judge Levi of the Eastern District of California, however, concluded to the contrary. *Martinez,* 2005 WL 2072013, at *3. In *Martinez,* Judge Levi held that *Pickern* presented a different factual scenario than that in *Steger* and thus did not did not adopt *Steger* as the law of this Circuit. Judge Levi stated that:

> The plaintiff in *Pickern* actually encountered all of the barriers that he sought to remedy in his suit. The question for the court was whether he had to personally encounter the barriers within the year prior to filing his complaint in order to show a concrete and particularized injury. The court held that the plaintiff could establish an injury in fact by demonstrating that he knew of the barriers and was deterred from visiting during the statute of limitations period. The court discussed *Steger* only by way of general comparison. The court had no occasion to decide whether a plaintiff could have standing where the plaintiff neither encountered nor knew of a particular barrier prior to filing the complaint.

*Id.* Judge Levi then found that *Steger* was "fundamentally incompatible" with constitutional standing principles and held a plaintiff can only sue for barriers he actually knew of, or have reason to know of, and be deterred by, the barrier at the time the complaint is filed. *Id.* at *4. Judge Damrell of the Eastern District of California found Judge Levi's analysis and hold-

ing persuasive, and also held that a plaintiff has standing to sue only for those barriers she actually encountered and/or had reason to know of at the time of filing of the complaint. *White v. Divine Invs., Inc.,* 2005 WL 2491543, at *3–*4 (E.D.Cal. Oct.7, 2005). This Court has similarly held that an ADA plaintiff only has standing to sue for barriers the plaintiff had knowledge of or actually encountered. *Harris v. Costco Wholesale Corp.,* 389 F.Supp.2d 1244 (S.D.Cal.2005).

Plaintiffs contend the *Martinez* court's premise distinguishing *Pickern* from *Steger* was faulty because the Ninth Circuit did in fact decide whether a plaintiff could have standing when barriers were neither personally encountered nor known of prior to filing the complaint. In support, Plaintiffs state that the *Pickern* plaintiff, Jerry Doran, admitted that he only had firsthand knowledge about some of the barriers, and did not learn about the rest until after his expert documented them. Having reviewed the Mr. Doran's opening brief to the Ninth Circuit, the Court agrees with Plaintiffs that Mr. Doran asserted in his Statement of Facts that "based on the plaintiff's personal visits to the grocery stores *and on his review of expert findings,* the plaintiff knows that the Paradise and Anderson stores have architectural barriers with respect to the parking, paths of travel, checkout aisles and restrooms." *See Pickern v. Holiday Quality Foods, Inc.,* Appellant's Opening Brief, 2001 WL 34090054, at * 4 (9th Cir. Apr.23, 2001) (emphasis added). However, the Court is not persuaded that statement mandates the conclusion the Ninth Circuit specifically considered whether a plaintiff has standing to seek removal of barriers he did not personally encounter or have actual knowledge of prior to the filing of the complaint. As stated by *Martinez,* the issue presented to the Ninth Circuit was one concerning statute of limitations. In-

deed, Mr. Doran's opening brief to the Ninth Circuit stated the issue presented for review was:

> Where a store has continually existing architectural barriers that discriminate against persons with disabilities in violation of the law, and where a disabled person wants to patronize that store but, because of his knowledge of those barriers, is specifically deterred from visiting the store during the statutory period, does the disabled person need to physically encounter the barriers during the statutory period to state a claim under the Americans with Disabilities Act and related state laws?

*Id.* at *1–*2. The focus on the statute of limitations issue is underscored by the Ninth Circuit's statement in its opinion that,

> [w]e hold that when a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the "futile gesture" of attempting to gain access in order to show actual injury during the limitations period.

*Pickern,* 293 F.3d at 1135.

 Further, Mr. Doran's opening brief on appeal does not indicate he learned of additional barriers from his expert *after* he filed his complaint. Notably, there is nothing in the Ninth Circuit's decision indicating that a plaintiff can seek removal of barriers that he learns about through expert reports *after* filing the complaint. Accordingly, this Court holds that Plaintiffs can only sue for barriers

they encountered or had knowledge of prior to filing suit.

 The First Amended Complaint alleges:

> The Hubbards visited the Store and encountered barriers (both physical and intangible) that interfered with—if not outright denied—their ability to use and enjoy the goods, services, privileges, and accommodations offered at the facility. To the extent known by The Hubbards, attached as Exhibit A to this complaint is a true and accurate list (with photos) of barriers that denied their access at the Store.

(First Am. Compl. ¶ 10.) The Preliminary Site Accessibility Report, attached as Exhibit A to the Amended Complaint, lists 25 barriers to the Store, and was not prepared by the Plaintiffs.[6] However, in their discovery responses and during their deposition, Plaintiffs represented they only encountered or had actual knowledge of the following seven barriers at the Store: (1) absence of "No Parking" painted in white in access aisle; (2) ramp from public sidewalk was too steep; (3) the door was too heavy and the handles were problematic; (4) some merchandise was too high; (5) they were unable to use the self-help coffee service counter; (6) no public restroom; and (7) no tow away sign.[7] Because at the summary judgment stage a plaintiff's allegations of standing must be supported by affidavit or evidence, the Court finds the evidence in the record only supports Plaintiffs' standing as to the seven barriers identified through discovery, and not to all 25 barriers identified in Exhibit A to the Amended Complaint, nor to the

---

**6.** Trotter (09/16/05) Decl. Ex. B, L. Hubbard Depo. 6:16–7:22; Trotter (09/16/05) Decl. Ex. C, B. Hubbard Depo. 65:7–66:2.

**7.** Trotter (09/16/05) Decl. Ex. D, Pls.' Resp. to Interrogs., Resp. No. 10; Trotter (09/16/05)

Decl. Ex. B, L. Hubbard Depo. 33:3–34:14, 38:13–39:23, 42:6–45:24; Trotter (09/16/05) Decl. Ex. C, B. Hubbard Depo. 33:8–11, 39:24–40:1, 43:3–16, 47:1–9.

additional barriers identified by Plaintiffs' expert, Reed Settle, throughout the course of this litigation.[8]

 In opposition to 7–Eleven's summary judgment motion, Plaintiffs submitted declarations in which they state that on three occasions in 2004, Plaintiffs visited the Store and encountered the following barriers: (1) lack of an accessible route from the public sidewalk to the Store entrance; (2) the tow-away sign for the disabled parking space was the wrong color, and was missing vehicle recovery information; (3) lack of signage indicating an accessible path of travel to the Store entrance; (4) excessive slopes at the Store entry made it difficult to use the lift in order to enter and exit their van; (5) the check-out counter had insufficient clear knee space, and had merchandise holders that projected into the required clear knee space, making it difficult to approach the counter; (6) a lack of clear floor space in front of the ATM machine inside the Store, making it difficult to use the ATM machine; (7) the coffee cups and other dispensers at the coffee counter were too high; (8) they were unable to leave the Store after one visit because a Store patron had parked in the access aisle of the disabled parking space.[9] Defendant objects to Plaintiffs' declarations insofar as they contend Plaintiffs encountered the following barriers: (1) lack of signage indicating an accessible path of travel to the Store entrance; (2) excessive slopes at the Store entry; (3) check-out counter had insufficient clear knee space and merchandise holders that projected into the required clear knee space; and (4) lack of clear floor space in front of the ATM ma-

chine inside the Store. Neither Plaintiff included these as barriers to access in their deposition or discovery responses, and by now asserting they encountered these barriers Plaintiffs' declarations contradict their earlier deposition testimony. Such a contradictory declaration does not create a triable issue of material fact and thus Plaintiffs cannot now try to include these barriers to defeat Defendant's motion for summary judgment. *See Hambleton Bros. Lumber Co. v. Balkin Enters. Inc.*, 397 F.3d 1217, 1225 (9th Cir.2005) ("Under our 'sham' affidavit rule, 'a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'") (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991)); *Block v. City of Los Angeles*, 253 F.3d 410, 419 n. 2 (9th Cir.2001) ("A party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts."). Accordingly, the Court will only consider the barriers that according to Plaintiffs' discovery responses and deposition testimony, Plaintiffs actually encountered or had actual knowledge of prior to filing this action.

### I. *Barriers Under the ADA*

There is no triable issue of material fact that the Store opened for business on January 18, 1978.[10] Less rigorous standards are imposed on facilities such as the Store that were constructed before the ADA's effective date. *Deanda v. Savings Inv., Inc.*, 2005 WL 3477565, at *3 (S.D.Cal. Nov.8, 2005). Existing facilities are required to remove architectural barriers

---

**8.** The Court further notes that Plaintiffs lack standing to pursue claims based on violations that discriminate against individuals with disabilities other than those suffered by the Plaintiffs. *See Steger*, 228 F.3d at 893; *Parr*, 96 F.Supp.2d at 1082.

**9.** *See* L. Hubbard Decl. ¶¶ 5–6; B. Hubbard Decl. ¶¶ 5–6.

**10.** Gengo (09/16/05) Decl. ¶ 2; Gengo (01/09/06) Decl. ¶ 2.

that deny access only when "such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv); *Pickern,* 293 F.3d at 1135. The term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9); *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 880 n. 15 (9th Cir.2004). The following factors are to be considered in determining if the removal is readily achievable:

> (A) the nature and cost of the action needed under this chapter; (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources or the impact otherwise of such action upon the operation of the facility; (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9).

## A. Absence of "No Parking" Painted in White in Access Aisle

█ In discovery, Plaintiffs identified one of the barriers they encountered was that "No Parking" was not painted in white in the access aisle.[11] Defendant moves for summary judgment as to this issue, arguing the ADA does not require

that "No Parking" be painted in the access aisle. Instead, this is a requirement under California Code of Regulations, Title 24. Title 24 does not apply to the Store because that state law only applies to facilities that have been altered. *Pickern v. Best Western Timber Cove Lodge Marina Resort,* 194 F.Supp.2d 1128, 1131 n. 4 (E.D.Cal.2002). Plaintiffs have not presented any authority to the contrary. Further, the declaration of Joseph Gengo, Division Construction Manager for the Mid Pacific Division of 7–Eleven, establishes that in accordance with 7–Eleven's Accessibility Upgrade Program and to address the Plaintiffs' allegations, Defendant painted "No Parking" in white in the access aisle.[12] Because the only relief available under the ADA is injunctive, the fact the alleged barrier has been remedied renders the issue moot. *See Parr,* 96 F.Supp.2d at 1087 (holding that "[t]he claims that have been remediated are no longer in dispute and are therefore moot"); *Independent Living Res. v. Oregon Arena Corp.,* 982 F.Supp. 698, 771 (D.Or.1997) (stating that when "the challenged conditions have been remedied, then these particular claims are moot absent any basis for concluding that [the] plaintiff[ ] will again be subjected to the same wrongful conduct by [the] defendant").

## B. Ramp from the Public Sidewalk too Steep

In discovery, Plaintiffs represented that one of the barriers they encountered was Defendant did not provide an accessible path of travel from the property border to the Store entrance. Specifically, Plaintiffs contended that the ramp from the public sidewalk to the Store entrance was too

---

**11.** Trotter (09/16/05) Decl. Ex. B, L. Hubbard Depo. 33:3–6, 42:21–24.

**12.** Gengo (09/16/05) Decl. ¶ 5; Gengo (01/09/06) Decl. ¶ 3; Davenport Decl. ¶ 2.

steel.[13] Plaintiffs' expert states in his declaration there is no complying path of travel from the public street and sidewalk to the entrance of the Store and the slope of the public sidewalk has a slope of 5%, which violates ADAAG § 4.3.2(1).[14] Mr. Settle's recommendation is that Defendant "[p]rovide a ramp at this location, to include handrails on both sides."[15]

"The 'slope' or 'running slope' measures the rise (or fall) of the path in the direction of travel." *Parr*, 96 F.Supp.2d at 1087; ADAAG § 3.5. "A one percent slope rises (or falls) at the rate of one foot vertically for every one hundred feet of distance traveled." *Parr*, 96 F.Supp.2d at 1087 (internal quotations omitted). The ADAAG states that "[a]n accessible route with a running slope of greater than 1:20 [or 5%] is a ramp and shall comply with 4.8." ADAAG § 4.3.7; *Parr*, 96 F.Supp.2d at 1087. The ADA guidelines state "[t]he least possible slope shall be used for any ramp." ADAAG § 4.8.2. For new construction, the maximum slope of a run is 1:12, or 8.33%. *Id.*; *Parr*, 96 F.Supp.2d at 1087. Ramps to be constructed on existing sites, buildings, or facilities, may have

slopes and rises as allowed in 4.1.6(3)(a) if space limitations prohibit the use of a 1:12 slope or less. ADAAG § 4.8.2; *Parr*, 96 F.Supp.2d at 1087.

A "cross slope" is "[t]he slope that is perpendicular to the direction of travel." ADAAG § 3.5; *Parr*, 96 F.Supp.2d at 1087. A cross slope that is too steep can cause a wheelchair occupant to have difficult steering and, in extreme cases, cause the wheelchair to overturn. *Parr*, 96 F.Supp.2d at 1087. Under the federal law, a cross slope of an accessible route cannot exceed 1:50, or 2%. ADAAG § 4.3.7; *Parr*, 96 F.Supp.2d at 1087.

In its motion for summary judgment, Defendant presented evidence that there is an accessible path of travel through the parking lot from the property border to the Store entrance and that Defendant had outlined a path through the parking lot in blue, painted "No Parking" in white throughout the path, and placed an International Symbol of Accessibility near the parking lot entrance, designating the path as an accessible route.[16] In opposition to Defendant's motion, Plaintiffs respond that the path through the parking lot is inac-

---

**13.** Trotter (09/16/05) Decl. Ex. B, L. Hubbard Depo. 33:13–16; 45:2–24; Trotter (09/16/05) Decl. Ex. B, B. Hubbard Depo. 33:8–11.

**14.** Settle Decl. Ex. A, Settle Expert Report dated 09/01/05 Item 2.1.

The Court notes Mr. Settle's declaration states he inspected the Store on July 21, 2005, and documented barriers to access in his site report dated September 1, 2005. (Settle Decl. ¶ 2.) The July 21, 2005 inspection was a noticed inspection; Mr. Settle used instruments to take measurements, and photographs were taken. (Trotter (01/09/06) Decl. Ex. B, Settle Depo. 13:25–14:2, 14:6–8, 19:9–18.) Mr. Settle's declaration further states he reinspected the premises on September 29, 2005, and prepared another report dated September 30, 2005 based on that reinspection. (Settle Decl. ¶ 3.) Defendant objects to Mr. Settle's conclusions arising out of the Septem-

ber 29, 2005 reinspection. Having reviewed the record, the Court finds Defendant's objections well-founded. The September 29, 2005 reinspection was not noticed, and it appears Mr. Settle did not take any measurements during that reinspection. (*See* Trotter (01/09/06) Decl. Ex. B, Settle Depo. 19:19–21.) Accordingly, any conclusions regarding dimensions are not supported, so the Court will rely on Mr. Settle's September 1, 2005 report. *See Chapman v. Maytag Corp.*, 297 F.3d 682, 687–88 (7th Cir.2002) (holding that expert's opinion was inadmissible because the expert did not conduct any scientific tests or experiments to arrive at his conclusions).

**15.** Settle Decl. Ex. A, Settle Expert Report dated 09/01/05 Item 2.1.

**16.** Gengo (09/16/05) Decl. ¶¶ 5, 9, Ex. B; Gengo (01/09/06) Decl. ¶ 3; Davenport Decl. ¶ 2.

cessible because it has a slope greater than 8.33%.[17]

Defendants object to Mr. Settle's testimony that the slope of the path is greater than 8.33% because neither Mr. Settle nor Plaintiffs' attorney measured slope of the path of travel during the court-ordered site inspection.[18] Plaintiffs also object to this evidence on the basis that this barrier was not included in the parties' court-ordered Joint Report following the court-ordered site inspection to apprise the Court what barriers remained on the premises.[19] The Court finds it unnecessary to rule on whether Plaintiffs' evidence regarding the slope of the path of travel through the parking lot is properly presented because Defendant has presented evidence showing it has addressed the slope of the sidewalk leading to the Store.

■ After the October 21 court-ordered inspection of the premises, Defendant completely replaced the apron leading to the Store entrance.[20] To do so, Defendant ripped apart the sidewalk at the store and placed a new frame on the ground to form a new ramp.[21] Next, concrete was poured over the frame and after it dried, the concrete was leveled so that the finished cross slope is less than 2% in all directions and the ramp slope was checked using a slope meter to ensure it does not exceed 8.33%.[22] Because the ramp exceeds 5%, Defendant placed handrails along both sides of the ramp.[23] Because this repair provided a new path of travel from the property sidewalk to the Store, Defendant placed directional signage at the property border indicating the path to the Store entrance.[24] Accordingly, because the evidence before the Court shows Defendant has remedied the violation in accordance with Mr. Settle's recommendation, the issue is moot. *See Parr,* 96 F.Supp.2d at 1087 (holding that "[t]he claims that have been remediated are no longer in dispute and are therefore moot"); *Independent Living,* 982 F.Supp. at 771 (stating that when "the challenged conditions have been remedied, then these particular claims are moot absent any basis for concluding that [the] plaintiff[ ] will again be subjected to the same wrongful conduct by [the] defendant").

## C. Door to the Store

■ One of the barriers Plaintiffs contend they encountered was that the door to the Store was too heavy for them to open by themselves and the outside handle was difficult for them to use.[25] Plaintiffs' expert did not identify the door as a barrier under the ADA. Thus, Plaintiffs have not presented any expert evidence to support their claim the door was in violation of federal law. Furthermore, Defendant has adjusted the door closure at the front entrance to ensure the doors require 5 pounds of force or less to open and replaced the door handles so they are closed-

---

17. Settle Decl. ¶ 6.

18. Trotter (01/09/06) Decl. ¶ 4.

19. *Id.* ¶ 5, Ex. A.

20. Gengo (01/09/06) Decl. ¶ 4; Davenport Decl. ¶ 3.

21. Davenport Decl. ¶ 3.

22. *Id.;* Gengo (01/09/06) Decl. ¶ 4.

23. Gengo (01/09/06) Decl. ¶ 4; Davenport Decl. ¶ 3.

24. Gengo (01/09/06) Decl. ¶ 4; Davenport Decl. ¶ 3.

25. Trotter (09/16/05) Decl. Ex. D, Pls.' Resp. to Interrogs., Resp. No. 10; Trotter (09/16/05) Decl. Ex. B., L. Hubbard Depo. 39:10–14; Trotter (09/16/05) Decl. Ex. C, B. Hubbard Depo. 47:1–9.

fist operable.[26] Insofar as the door presented a barrier to Plaintiffs during their visits to the Store, the barrier has been removed and thus the issue is moot. *See Parr*, 96 F.Supp.2d at 1087 (holding that "[t]he claims that have been remediated are no longer in dispute and are therefore moot"); *Independent Living*, 982 F.Supp. at 771 (stating that when "the challenged conditions have been remedied, then these particular claims are moot absent any basis for concluding that [the] plaintiff[ ] will again be subjected to the same wrongful conduct by [the] defendant").

### D. Merchandise and Self–Help Coffee Counter Too High

■ Plaintiffs' interrogatory responses indicated that one of the barriers they encountered was that several items of merchandise were too high for them to reach.[27] Through their interrogatory responses and deposition testimony, Plaintiffs also testified that they were unable to reach the coffee pots at the self-help coffee counter.[28] Their expert, Mr. Settle, states in his report that the top of the counter in the coffee area is noncomplying because it is greater than 36 inches from the floor surface.[29] Mr. Settle further contends that the coffee dispensers are located in the middle of the counter requiring a side or forward reach over an obstruction, thus violating ADAAG § 4.2.6.[30]

■ As an initial matter, the Mr. Settle's declaration conflicts with the pictures of the counter included in his expert report, which indicate the counter is 36 inches tall.[31] Plaintiffs have not presented any authority indicating that at 36 inches, the counter's height violates the ADA. Further, ADAAG § 4.2.6 governs side reach ranges, providing that side reach shall be no less than 9 inches and no more than 54 inches above the floor. ADAAG § 4.2.6. Mr. Settle does not contend, nor do Plaintiffs present any authority, that the ADA requires all items within the Store to be at an accessible height. To the contrary, Defendant's expert represents there is no such requirement under the ADA.[32] Finally, Defendant has a policy of assisting disabled customers, and has installed ADA-compliant signage stating "If you require any assistance, please notify one of our friendly team members".[33] Signs such as the one posted by Defendant constitute a reasonable modification under the ADA.[34] *See* 36.305(b)(2) (providing that an alternative to barrier removal is retrieving merchandise from inaccessible shelves or racks); *Lieber v. Macy's West, Inc.*, 80 F.Supp.2d 1065, 1080 (N.D.Cal. 1999) (discussing 28 C.F.R. § 36.305(b)(2)); *Pinnock v. Int'l House of Pancakes Franchisee*, 844 F.Supp. 574, 582 (S.D.Cal.1993) (same); *Adelman v. Acme Markets Corp.*, 1996 WL 156412, at *3 & n. 2 (E.D.Pa. Apr.3, 1996) (noting that "retrieving an item from a shelf may be a 'reasonable

---

**26.** Gengo (09/16/05) Decl. ¶ 5; Gengo (01/09/06) Decl. ¶¶ 3–4; Davenport Decl. ¶ 3.

**27.** Trotter (09/16/05) Decl. Ex. D, Pls.' Resp. to Interrogs., Resp. No. 10.

**28.** *Id.;* Trotter (09/16/05) Decl. Ex. B, L. Hubbard Depo. 38:13–39:9; Trotter (09/16/05) Decl. Ex. C, B. Hubbard Depo. 43:3–18.

**29.** Settle Decl. Ex. A, Settle Expert Report dated 09/01/05 Item 6.2.

**30.** *Id.*

**31.** *See id.* at Photo 26.

**32.** Trotter (09/16/05) Decl. Ex. A, Norkunas Expert Rebuttal Report dated 09/14/05 at 13.

**33.** Gengo (09/16/05) Decl. ¶ 5, Ex. A; Gengo (01/09/06) Decl. ¶ 3; Davenport Decl. ¶ 2.

**34.** Trotter (09/16/05) Decl. Ex. A, Norkunas Expert Rebuttal Report dated 09/14/05 at 13.

modification' to a store's self-service policy").

### E. No Public Restroom

 Plaintiffs stated in discovery that one of the barriers they encountered was they were told no restroom was available.[35] The parties do not dispute that the Store does not have a public restroom.[36] Because this affects both disabled and non-disabled persons alike, the absence of a public restroom is not an ADA violation. *Louie v. Ideal Cleaners,* 1999 WL 1269191, at *3 (N.D.Cal.1999).

### F. The Tow Away Sign

 Plaintiffs contend one of the barriers they encountered was the absence of a complying tow-away sign.[37] Plaintiffs contend that during one of their visits, a Store patron had parked in the access aisle and blocked Plaintiffs' access to their van until the patron removed his car.[38] Plaintiffs maintain that they were not able to call to have the car towed away because the tow away sign was noncomplying.[39] Plaintiffs' expert report states the tow-away sign is the wrong color, and is missing the vehicle reclaim information.[40]

As acknowledged by Plaintiff's expert, there is no federal ADA requirement for tow signs; they are only governed by state law.[41] Second, Plaintiffs' expert acknowledged at his deposition that a phone number had been added to the tow sign, but maintained the sign was the wrong color.[42] The color of the tow signs does not violate the ADA and therefore does not provide a basis for relief under federal law.

## II. *Defendant 7–Eleven Employee Profit Sharing Foundation*

 This motion was filed by Defendant 7–Eleven, Inc. After the motion was filed, Plaintiffs amended the Complaint to name 7–Eleven Employee Profit Sharing Foundation as the new owner/operator of the Store. Because this Court's findings in this order are equally applicable to Plaintiffs' claims against Defendant 7–Eleven Employee Profit Sharing Foundation and Plaintiffs had an adequate opportunity to address the issues, summary judgment in Defendant 7–Eleven Employee Profit Sharing Foundation's favor is warranted. *See Kennedy v. Children's Serv. Soc. of Wisconsin,* 17 F.3d 980, 983 n. 1 (7th Cir.1994) ("If one defendant is granted a motion for summary judgment, the district court may *sua sponte* enter summary judgment in favor of nonmoving additional defendants 'if the motion raised by the first defendant is equally effective in barring the claim against the other defendants, and the plaintiff had an adequate opportunity to argue in opposition to the motion.' ") (quoting *Colan v. Cutler–Ham-*

---

35. Trotter (09/16/05) Decl. Ex. C, B. Hubbard Depo. 39:24–40:6; Trotter (09/16/05) Decl. Ex. D, Pls.' Resp. to Interrogs., Resp. No. 10.

36. Gengo (09/16/05) Decl. ¶ 8.

37. Trotter (09/16/05) Decl. Ex. B, L. Hubbard Depo. 42:6–20.

38. L. Hubbard Decl. ¶ 6(b); B. Hubbard Decl. ¶ 6(b).

39. L. Hubbard Decl. ¶ 6(b); B. Hubbard Decl. ¶ 6(b).

40. Settle Decl. ¶ 4; Settle Decl. Ex. A, Settle Expert Report dated 09/01/05 Item 1.1; Trotter (01/09/06) Decl. Ex. B, Settle Depo. 20:22–23:10.

41. Trotter (01/09/06) Decl. Ex. B, Settle Depo. 25:13–22; Settle Decl. ¶ 4 (citing only state law regarding tow sign requirements); *see also* Trotter (09/16/05) Decl. Ex. A, Norkunas' Expert Rebuttal Report dated 09/14/05 at 3.

42. Trotter (01/09/06) Decl. Ex. B, Settle Depo. 24:18–26:3.

*mer, Inc.,* 812 F.2d 357, 360 n. 2 (7th Cir.1987)).

### III. *State Law Claims*

Having found that summary judgment in Defendant's favor as to Plaintiff's ADA claim is warranted and there being no other basis for federal jurisdiction, the Court DISMISSES the state law claims under 28 U.S.C. § 1367(c)(3) **WITHOUT PREJUDICE TO BEING RE-FILED IN STATE COURT.**

### *CONCLUSION*

Having reviewed the record, and applicable law, **IT IS HEREBY ORDERED:**

1. Defendant 7-Eleven, Inc.'s Motion for Summary Judgment is **GRANTED.**

2. Summary judgment is **GRANTED** as to Defendant 7-Eleven Employee Profit Sharing Foundation.

3. Plaintiffs' remaining causes of action under state law are **DISMISSED WITHOUT PREJUDICE** to being re-filed in state court. The Court expresses no opinion on whether Plaintiffs are entitled to injunctive relief or damages under state law as to the barriers discussed in this order or as to the barriers identified by Plaintiffs' expert.

The Clerk of the Court is directed to enter judgment in accordance with this order.

**IT IS SO ORDERED.**