# United States Court of Appeals

## For the First Circuit

No. 04-1793

NEREIDA RUIZ-CASILLAS,

Plaintiff, Appellant,

v.

LUIS A. CAMACHO-MORALES, in his official capacity as Federal
Programs Director of the Municipality of Humacao; JANE DOE;
conjugal partnership CAMACHO-DOE; MARCELO TRUJILLO-PANISSE,
in his official capacity as Mayor of the Municipality of
Humacao; JANE DOE; conjugal partnership TRUJILLO-DOE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Lynch, Circuit Judges.

Marie Elsie López-Adames, on brief, for appellant.
Jorge Martínez-Luciano, with whom Gina Ismalia Gutiérrez-
Galang, Law Offices of Pedro Ortiz-Álvarez, and Michael C. McCall,
Civil Rights Legal Task Force, on brief, for appellees.

June 30, 2005

**TORRUELLA**, **Circuit Judge**. Plaintiff-appellant Nereida Ruiz-Casillas appeals the summary judgment entered in favor of defendants-appellees Mayor and Federal Programs Director of the Municipality of Humacao for claims of political discrimination under 42 U.S.C. § 1983. Specifically, Ruiz contests the district court's finding that she occupied a policymaking trust position, thereby foreclosing her First and Fourteenth Amendment claims given the party affiliation requirement. Appellant also argues that, despite her dismissed causes of action, the district court erred in failing to address defendants' qualified immunity defense. After careful review, we affirm.

## I. Background

Ruiz, an employee of the Municipality of Humacao, Puerto Rico and a member of the Popular Democratic Party (PDP), has served as Administrative Director of the Federal Programs Division of Humacao since 1985. Although her appointment as Administrative Director was initially transitory, the position was made permanent by virtue of a 1991 ordinance.[1]

In January 2001, defendant-appellee Marcelo Trujillo-Panisse became the Mayor of Humacao and, as such, took responsibility for establishing the municipality's public policy,

---

[1] The "Programmatic" Director position was held by Zaida Pérez from 1985 until 1996, when Pérez departed. This position remained vacant until 2001, making Ruiz the de facto Director in the interim period.

organization, and personnel regulation. Trujillo appointed defendant-appellee Luis Camacho-Morales as Director of the Municipality's Federal Programs Division that same year. Like Ruiz, both Trujillo and Camacho are members of the PDP.

Ruiz alleges that after defendants' assumption of power, they harassed and discriminated against her by, inter alia, stripping her of the job's functions and duties, denying her access to a phone line, telling other employees not to speak with her, and acting aggressively towards her. These actions were allegedly spurred by Ruiz's political beliefs, specifically, her support for the previous mayor and administration, who were affiliated with the rival New Progressive Party (NPP).

On November 6, 2002, Ruiz filed a complaint in the federal district court for the District of Puerto Rico, which she amended on February 10, 2003 to add First and Fourteenth Amendment claims under § 1983. Defendants moved for summary judgment on September 11, 2003, arguing, inter alia, that the claim was barred by the statute of limitations defense, that Ruiz had failed to establish a prima facie case, and that they had qualified immunity.

On April 27, 2004, the district court granted defendants' summary judgment motion and dismissed Ruiz's claims. Ruiz-Casillas v. Camacho-Morales, No. 02-2640 (D.P.R. Apr. 27, 2004). The court reviewed the record properly before it to find that the nature of Ruiz's tasks and her position's close involvement with high-level

policymakers indicated that she was a policymaking trust employee, for whom party affiliation was an appropriate employment requirement. Id. at 13-23. The court also found that Ruiz's Fourteenth Amendment claim faltered because as a trust employee, she had no cognizable property interest in her trust employment for a due process claim, id. at 23-24, and her equal protection claim merely restated her failed First Amendment claim, id. at 24-25. Having dismissed all causes of action, the court declined to address the qualified immunity defense. Id. This appeal follows.

## II. Analysis

### A. First Amendment

Ruiz first argues that the district court erred in finding that she had occupied a "political" position, and thus lacked a colorable First Amendment claim for political discrimination on the basis of party affiliation. We are not convinced.

Summary judgment entries are reviewed de novo, viewing all facts in the light most favorable to the nonmoving party and granting all reasonable inferences in that party's favor. See, e.g., Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000). Such judgments are upheld "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

-4-

to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgments will also be upheld "if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation," Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Finally, our inquiry as to whether a government position is "political," though fact intensive, presents a question of law requiring a de novo assessment of all relevant evidence. Ortiz-Piñero v. Rivera-Arroyo, 84 F.3d 7, 12 (1st Cir. 1996).

In political discrimination cases, plaintiffs must first establish that party affiliation was a substantial or motivating factor behind the adverse employment action. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Defendants then carry the burden to establish either a nondiscriminatory reason for the challenged action, see id. at 287, or that plaintiff held a "political position," for which party affiliation constitutes "an appropriate requirement for the effective performance of the public office involved," Branti v. Finkel, 445 U.S. 507, 518 (1980). See Ortiz-Piñero, 84 F.3d at 12. Unlike non-policymaking career positions, "political positions" are terminable without cause when political affiliation is an appropriate requirement for the position. See, e.g., Elrod v. Burns, 427 U.S. 347, 362-63 (1976); Galloza v. Foy, 389 F.3d 26, 28-29 (1st Cir. 2004). This rule ensures that "representative

-5-

government [will] not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." Elrod, 427 U.S. at 367.

In determining whether a position is "political," we engage in a two-step inquiry: (1) whether the governmental unit decides "issues where there is room for political disagreement on goals or their implementation," and (2) whether the position's responsibilities "resemble[] [those of] a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." Jiménez Fuentes v. Torres Gaztambide, 807 F.2d 236, 241-42 (1st Cir. 1986) (en banc); see also Galloza, 389 F.3d at 29-30; Duriex-Gauthier v. López-Nieves, 274 F.3d 4, 9 (1st Cir. 2001).

In determining the second prong, we examine the position's "inherent attributes," for which the job description is the most useful starting point. Galloza, 389 F.3d at 31. Job descriptions that are broad or open ended -- given the employee's latitude to exercise discretionary judgment -- generally indicate a policymaking position, while job descriptions that are narrowly circumscribed inhibit freedom of action and generally indicate a non-policymaking position. Id. The job title, however, is not necessarily dispositive in the inquiry, Duriex-Gauthier, 274 F.3d at 8. Instead, we examine other indicia including "relative pay,

technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, . . . responsiveness to partisan politics and political leaders . . . [and] responsibilities that are not well defined or are of broad scope." Jiménez Fuentes, 807 F.2d at 242 (internal quotation marks omitted).

Before delving into our inquiry, we note that appellant has submitted voluminous documents to this court that were never introduced, or were never properly introduced,[2] before the district court. Our inquiry, therefore, is limited to the record properly before the court. See Fed. R. App. P. 10(a).

The resolution of the instant case revolves around the second prong described above, as "the OFP [Office of Federal Programs] unmistakably is a municipal department or agency whose overall functions involve decision making on issues where there is room for political disagreement on goals or their implementation." Ortiz-Piñero, 84 F.3d at 12-13 (internal quotation marks omitted).

Our examination of the second prong -- for which the job description[3] is the most useful starting point -- indicates that

---

[2]  The district court declined to consider one document submitted by defendants which failed to comply with the requirements of 48 U.S.C. § 864 (2000 & Supp. 2003).

[3]  Although neither party submitted a proper job description before the district court (defendants submitted an untranslated copy of Ruiz's job description which was not considered), defendants

appellant's responsibilities resemble those of a policymaker. Her duties are broad and open-ended: "[a]ny matter for the mayor referred to [her] regarding the [federal] programs." Docket Document No. 52. Moreover, Ruiz remained in continuous contact with the Mayor and the Director regarding the progress of projects, attended meetings, seminars, Housing and Development (HUD) orientation, and accomplished various tasks which demonstrate "technical competence, power to control others, authority to speak in the name of policymakers, . . . influence on programs, [and] contact with elected officials."[4] Jiménez Fuentes, 807 F.2d at 242. Furthermore, Ruiz's "relative pay," another factor we consider, see id., is only $100 less than the monthly salary of Director Camacho, whose position is indisputably a "political" trust position. We also note that when Camacho left the director office on October 9, 2001, Ruiz assumed the de facto position of director, assuming duties including the supervision of employees.[5]

---

submitted certified translations of Ruiz's deposition discussing her job description, which forms the basis of our inquiry. This deposition testimony merely recites the duties in Ruiz's official, written job description (Form OP-16).

[4] After Camacho assumed the Director position, Ruiz admits to, inter alia, participating in the preparation of a HUD monitoring report, reviewing professional services contracts, attending meetings with auditors to discuss audit reports, sending a memo to Camacho regarding the dress code, reviewing contracts regarding the building facilities, and drafting communication directing employees to take ethics seminars. Ruiz Casillas, No. 02-2640 at 19-20.

[5] It also appears that Ruiz occupied the de facto director position from 1996 until 2001, when the Director position was

Given Ruiz's broad-based responsibilities,[6] as well as her close-working relationships with policymakers, we find that she occupied a "political" trust position, for which party affiliation is a requirement, see Jiménez Fuentes, 807 F.2d at 240.

Appellant nonetheless attempts to salvage her claim by arguing that the Administrative Director position was labeled as a "career" position by a 1991 municipal ordinance. While such designation might be entitled to some deference by this court, "[w]e have consistently held that the job description is the best, and sometimes dispositive, source for determining the inherent functions of the position." Duriex-Gauthier, 274 F.3d at 8. This is the case here, where an examination of Ruiz's job description strongly indicates that she occupied a policymaking trust position.[7]

Appellant also alleges that the district court erred in relying on her deposition testimony relating to tasks she performed as Director and Administrative Director. The deposition testimony analyzed by the district court, however, merely recites the duties

---

unoccupied.

[6] Although the record indicates that Ruiz also performed more specific tasks, such as answering mail and phone calls, we find that her overall job description accords more closely to a policymaking position.

[7] Furthermore, the "Programmatic" Director position, like the Administrative Director position, is likewise labeled as "career," further indicating the gap between position labels and actual job functions.

in appellant's official, written job description (Form OP-16).  We therefore find no error in the district court's reliance on the deposition testimony.

Since appellant's Administrative Director position resembles that of a policymaking trust employee -- for which party affiliation is an appropriate requirement -- her First Amendment claim necessarily founders.  Thus, we affirm the district court's entry of summary judgment on her First Amendment claim.

## B.  **Fourteenth Amendment**

Appellant further argues that even if she had performed certain policymaking duties, this did not extinguish her "career" position and the due process "property rights" attached thereunder.  This argument also fails.

The Due Process Clause of the Fourteenth Amendment protects government employees who possess property interests in continued public employment.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985); Galloza, 389 F.3d at 33.  To determine whether public employees possess such a property right, we examine the local law and the terms and conditions of the employment arrangement.  See id.; Ortiz-Piñero, 84 F.3d at 17. Under Puerto Rico law, public employees are categorized into either career or trust/confidential positions.  3 P.R. Laws Ann. § 1349. Trust or confidential employees "intervene or collaborate substantially in the formation of the public policy, [and] . . .

-10-

advise directly or render direct services to the head of the agency . . . ." Id. § 1350. Unlike career employees, who are removable only for cause, trust employees are of "free selection and removal." Id. Thus, "trust [employees] do[] not have a constitutionally protected property interest in that position." Galloza, 389 F.3d at 34.

In any event, whether or not appellant's downgrading of duties would constitute adverse action for purposes of the First Amendment, Ruiz was not fired, and "[u]nder Puerto Rico law, public employees have a property interest in their continued employment, not in the functions they perform." Rosado de Vélez v. Zayas, 328 F. Supp. 2d 202, 212 (D.P.R. 2004) (citing Consejo de Educación de la U.P.R. v. Roselló, 137 D.P.R. 83, 110 (1994)). The equal protection claim also founders, as it is a mere restatement of appellant's failed First Amendment claim. See, e.g., Néstor Colón Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992) (finding "little basis or justification for applying equal protection analysis" where Equal Protection claim overlapped with failed First Amendment claim). We therefore affirm on this issue.

## C. **Qualified Immunity**

The failure of appellant's constitutional claims obviates our need to address the qualified immunity defense: we have found no constitutional violation. See Suboh v. Dist. Attorney's Office, 298 F.3d 81, 90 (1st Cir. 2002) (citing Hope v. Pelzer, 536 U.S.

730 (2002); <u>Saucier</u> v. <u>Katz</u>, 533 U.S. 194, 201 (2001); <u>Siegert</u> v. <u>Gilley</u>, 500 U.S. 226, 232 (1991)) ("The threshold inquiry [in determining whether an official is entitled to qualified immunity] is whether the plaintiff's allegations, if true, establish a constitutional violation.").  The district court's judgment is affirmed.

**<u>Affirmed</u>**.