Maria C. VEGA MARRERO, Plaintiff

v.

CONSORCIO DORADO MANATI, et al., Defendants.

Civil No. 05–2354 (FAB).

United States District Court, D. Puerto Rico.

Feb. 2, 2007.

---

Maria S. Kortright–Soler, M.S. Kortright Soler Law Office, San Juan, PR,

Pedro R. Vazquez, III, Pedro R. Vazquez Law Office, Guaynabo, PR, for Plaintiff.

Charles A. Rodriguez–Colon, Andres Guillemard–Noble, Monique Guillemard–Noble, Francis A. Marquez–San Martin, Nachman & Guillemard, Miguel A. Romero–Lugo, Romero, Rodriguez & Quijano, PSC, Maria Judith Surillo, Department of Justice, Robert Millan, Millan Law Office, Francisco R. Gonzalez–Colon, Francisco J. Gonzalez–Magaz, F.R. Gonzalez Law Office, Manuel D. Herrero–Garcia, Herrero & Herrero Law Office, San Juan, PR, Maria Judith Surillo, Department of Justice, Marcos A. Ramirez–Lavandero, San Juan, PR, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

On December 30, 2005, Maria C. Vega Marrero, former Local Office Manager of the Consorcio Dorado–Manati (the "Consortium"), filed a complaint against the Consortium, the Municipalities of Dorado, Manati, Florida, Vega Alta, Vega Baja, Barceloneta, Morovis, Ciales, their respective Mayors,[1] Jose Sanchez, the Consortium's Executive Director, and Benjamin Ramirez, the Consortium's Human Resources Director, pursuant to 42 U.S.C. §§ 1983, 1985 and 1986. She alleges, in essence, political discrimination, deprivation of her First, Fifth and Fourteenth Amendment rights, and violation of state laws. Ms. Vega also alleges that defendants conspired to deprive her "of her civil rights, namely, the right to due process and the right to a full and fair hearing before an impartial forum." (Docket No. 1).

Defendants Jose Sanchez, Delilah Ruiz Manzano, and Benjamin Ramirez Cardona, in their individual capacities, moved for summary judgment, in their individual ca-

---

1. In their individual and official capacities.

pacities, to dismiss plaintiff's claims (Docket No. 3). On September 12, 2006, the Court granted the Consortium's, Mr. Sanchez's, Ms. Ruiz Manzano's (in their official capacities), the Municipality of Vega Alta's and the Municipality of Ciales' request to join the motion for summary judgment. (Docket No. 55).

For the reasons discussed below, the Court **GRANTS IN PART AND DENIES IN PART** defendants' Motion for Summary Judgment.

### A. The facts

The Consortium is a non-profit partnership composed of several municipalities, namely: Manati, Vega Baja, Dorado, Morovis, Vega Alta, Florida, Ciales, and Barceloneta. (*See*, Docket No. 1, 4.1). The Consortium administrates federal funds for the implementation of the Workforce Investment Act of 1998 ("WIA"), 29 U.S.C. §§ 2801–2945.

Ms. Vega Marrero began working as the Manager of the Vega Baja Local Office of the Consortium on February 18, 2003. (*See*, Docket No. 52, Exh. C). Her employment contract began on February 18, 2003 and expired on July 30, 2003. *Id.* On June 16, 2003, four months after she began work, Ms. Vega Marrero was advised that, pursuant to a Classification and Compensation Plan prepared for the personnel of the Consortium, her position was classified "on scale number eleven (11), intermediate level two (2), of the trust service, with a monthly salary of $2,949.00." (*See*, Docket No.25, Exh. A).

On June 23, 2003, four months after she began working for the Consortium, Ms. Vega Marrero signed an "Oath of Loyalty and Assumption of Office" in which she specifically indicated that she held a trust position. (*Id.*, Exh. B.)

Following the Puerto Rico general elections held in November, 2004, New Progressive Party ("PNP") mayoral candidates were elected to six of the above mentioned municipalities. Popular Democratic Party ("PPD") mayoral candidates were elected in two municipalities—Dorado and Barceloneta. Control of the Consortium passed from the PPD to the PNP, which controlled a majority of the municipalities after the newly-elected Mayors took office in January, 2005. On January 21, 2005, Ms. Vega Marrero's employment contract with the Consortium was terminated. (*See*, Docket No. 1, 4.12).

Ms. Vega Marrero then filed a claim before the Equal Employment Opportunity Office (EEO), alleging that her termination was based on her political affiliation with the PPD and that her duties as a Local Manager were not akin to those of a trust position.[2] In addition, she claimed a right to be reinstated to a career position because she was "recruited into the position of Manager of the Local Office as a career position." (Docket No. 52, Exh. H). The EEO claim was closed on March 28, 2005 (Docket No. 52, Exh. N).

On December 30, 2005, Ms. Vega Marrero brought suit alleging political discrimination under 42 U.S.C. § 1983, deprivation of her First, Fifth and Fourteenth Amendment rights, and violation of state laws. Plaintiff also alleges a violation of 42 U.S.C. §§ 1985 and 1986, claiming that defendants conspired to deprive her "of her civil rights, namely, the right to due process and the right to a full and fair hearing before an impartial forum." (Docket No. 1, ¶ 4.28).

On March 13, 2006, defendants Sanchez, Ruiz Manzano and Ramirez Cardona, in their individual capacities, moved for Summary Judgment (Docket No. 3) arguing, in

---

**2.** This claim was assigned to defendant Delilah Ruiz, an EEO Officer.

essence, that plaintiff's position as a Local Manager for the Consortium is not protected from patronage because political affiliation was properly required for it. In the alternative, they argued that if Ms. Vega Marrero's position enjoys protection from patronage, they are entitled to qualified immunity. They also contended that Ms. Vega Marrero's claims under sections 1985 and 1986 should be dismissed because, among other reasons, the pleadings fail "to flesh out the alleged facts that make up such violations." Finally, they argued that the complaint fails to state a cognizable Law 100 state claim because Law 100 (P.R. Laws. Ann. tit. 29 § 146) operates against employers, "a label that does not fit any of the appearing individual-capacity defendants." On September 12, 2006, the Court granted the Consortium's, Sanchez's, Ruiz Manzano's (in their official capacities), the Municipality of Vega Alta's and the Municipality of Ciales' request to join the request for summary judgment. (Docket No. 55).

Although the Municipalities of Dorado, Manati, Florida, Vega Baja, Barceloneta and Morovis did not join the motion for summary judgment or file a motion of their own, this Court's findings are equally applicable to Ms. Vega Marrero's claims against them. *See Kennedy v. Children's Serv. Soc. Of Wisconsin*, 17 F.3d 980, 983 n. 1 (7th Cir.1994) ("If one defendant is granted a motion for summary judgment, the district court may *sua sponte* enter summary judgment in favor of nonmoving additional defendants 'if the motion raised by the first defendants is equally effective in barring the claim against the other defendants, and the plaintiff had an adequate opportunity to argue in opposition to the motion'") (citations omitted). *See also Hubbard v. 7–Eleven, Inc.*, 433 F.Supp.2d 1134, 1149–1150 (S.D.Cal.2006).

B. *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also, Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000); *Morales, et al. v. St. Luke's Episcopal Hospital, et al.*, 328 F.Supp.2d 192, 195–196 (D.P.R.2004). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion for summary judgment has been presented to the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir.2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

Credibility issues fall outside the scope of summary judgment. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge". (*See, Rivera Abella v. Puerto Rico Telephone Co.*, 470 F.Supp.2d 86 (D.P.R.2007), (*citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). *See also, Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir.2000) ("court should not engage in credibility assessments."); *Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 49 (1st Cir.1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment"); *Perez–Trujillo v. Volvo Car Corp.*, 137 F.3d 50, 54 (1st Cir.1998)(credibility issues not proper on summary judgment); *Molina Quintero v.*

*Caribe G.E. Power Breakers, Inc.*, 234 F.Supp.2d 108, 113 (D.P.R.2002). While evaluating a motion for summary judgment,

"[t]here is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment". *Rivera Abella v. Puerto Rico Telephone Co.*, 470 F.Supp.2d at 91, (*citing Cruz–Baez v. Negron–Irizarry*, 360 F.Supp.2d 326, 332 (D.P.R.2005)).

### C. *Conspiracy Claims Under 42 U.S.C. §§ 1985 and 1986*

■ Section 1985(3) of Title 42 of the United States Code prohibits persons from conspiring to deprive any person, or any class of persons, of their constitutional rights. To state a claim under section 1985 a plaintiff "must allege the existence of (1) a conspiracy, (2) conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996); *Concepcion v. Zorrilla*, 309 F.Supp.2d 201, 213 (D.P.R.2004).[3]

**3.** Section 1985(3) states:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the

■ Equal protection within this provision specifically denotes conduct motivated by "some racial, or . . . otherwise class-based, invidiously discriminatory animus." *Concepcion,* 309 F.Supp.2d at 214 (*citing Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)); *Aulson,* 83 F.3d at 3 ("conspiratorial conduct . . . [must be] propelled by . . . 'invidiously discriminatory animus' "). *See also, Donahue v. City of Boston,* 304 F.3d 110, 122 (1st Cir.2002) (in order to prevail, plaintiff must present evidence that "(1) **some class-based animus** (usually racial) **lay behind the conspirators' action,** and (2) that the conspiracy was aimed at interfering with protected rights."); *Burns v. State Police Ass'n of Mass.,* 230 F.3d 8, 12 (1st Cir.2000) (emphasis added). Therefore, a party who wishes to prevail on a claim of a conspiracy to deprive a person or class of persons of their constitutional rights must prove that there is some racial or other class-based invidiously discriminatory animus behind the conspirators' action.

In *United Bhd. Of Carpenters and Joiners v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), the Supreme Court narrowed the scope of section 1985(3) by specifically excluding "conspiracies motivated by economic or commercial animus". The Court, however, declined to rule on whether its protection extended to "any class or organization on account of its political views or activities". *Id.,* at 838.

■ The First Circuit Court of Appeals has not yet issued an opinion on this matter and there is a debate among the courts about whether membership in a political party, absent racial bias, falls within the scope of a section 1985(3) protected class. Previous decisions of this district, however, have unanimously rejected extending the scope of section 1985(3) to conspiracies based exclusively on political discriminatory animus. *See Rivera Sanchez v. Autoridad de Energia Electrica,* 360 F.Supp.2d 302, 313 (D.P.R.2005); *Concepcion* 309 F.Supp.2d at 214; *Torres Ocasio v. Melendez,* 283 F.Supp.2d 505, 518 (D.P.R.2003); *Reyes v. Municipality of Guaynabo,* 59 F.Supp.2d 305, 310 (D.P.R.1999); *Morales–Narvaez v. Rossello,* 852 F.Supp. 104, 114–115 (D.P.R.1994); *Rodriguez v. Nazario,* 719 F.Supp. 52, 55–56 (D.P.R.1989). In this Court, an employment discrimination claim based on political affiliation does not comprise a cause of action under the civil rights conspiracy statute. *Torres Ocasio,* 283 F.Supp.2d at 518.

■ Section 1986 imposes liability on an individual who has knowledge of discrimination prohibited under section 1985. Hence, a section 1986 claim is contingent on a valid section 1985 claim. *See Hahn v. Sargent,* 523 F.2d 461, 469 (1st Cir.1975)

Defendants argue that a generous reading of the complaint is sufficient to determine that a section 1985 claim has not been pled because section 1985 does not

equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this

section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

extend to conspiracies based exclusively on political discrimination. Absent a valid section 1985 claim, defendants assert, plaintiff's claim under section 1986 should also be dismissed.

Ms. Vega Marrero, on the other hand, contends that her conspiracy claims are related to "defendants' conduct in the handling of her administrative grievance" where the defendants conspired to deprive her right to a full and fair administrative process. That is, she argues that her section 1985 claim "is **not** based on political discrimination." (Docket No. 21, p. 22)

The Court, however, cannot find any facts in Ms. Vega Marrero's allegations that could generate a valid claim against defendants under section 1985(3). Although she expressly denied that her section 1985 claim is based on political discrimination, Ms. Vega Marrero fails to demonstrate that the defendants discriminated against her based on her membership in a protected class, as required by section 1985. In short, Ms. Vega Marrero fails to show, allege or argue that there is some racial or other class-based invidiously discriminatory animus behind what she alleges was the defendants' action. *Concepcion*, 309 F.Supp.2d at 213. "A complaint that fails to allege any facts that would tend to show that the alleged conspirators were motivated by such animus fails to state a colorable claim under § 1985(3)." *Rolon v. Rosario & Associates, Inc.*, 450 F.Supp.2d 153, 161 (D.P.R. 2006), (*citing Springer v. Seaman*, 821 F.2d 871 (1st Cir.1987)).

Accordingly, all claims brought pursuant to 42 U.S.C. § 1985 are **DISMISSED WITH PREJUDICE.** Because a section 1986 claim is dependent on the existence of a cognizable section 1985(3) claim, Ms. Vega Marrero's section 1986 claim is also **DISMISSED WITH PREJUDICE.**

D. *First Amendment and Due Process Claims*

The First Amendment protects associational rights. Incorporated within this prophylaxis is the right to be free from discrimination on account of one's political opinions or beliefs. *See Galloza v. Foy*, 389 F.3d 26, 28 (1st Cir.2004); *LaRou v. Ridlon*, 98 F.3d 659, 661 (1st Cir.1996). This protection extends to matters of public employment: as a general rule, a government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party. *See Galloza*, 389 F.3d at 28; *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1996).

In order to determine whether or not Ms. Vega Marrero was the victim of objectionable political patronage on a motion for summary judgment, she first must show that party affiliation was a substantial or motivating factor for the challenged action. *See Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Galloza*, 389 F.3d at 26, *Ruiz–Casillas v. Camacho–Morales*, 415 F.3d 127 (1st Cir.2005); *Ortiz–Piñeiro v. Rivera–Arroyo*, 84 F.3d 7, 12 (1st Cir.1996). The burden then shifts to defendants to establish either a nondiscriminatory reason for the dismissal, *Ferrer v. Zayas*, 914 F.2d 309, 311 (1st Cir.1990), *or* that plaintiff held a "political" position for which party affiliation constituted an appropriate qualification for continued employment. *See Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Ortiz Piñero*, 84 F.3d at 12. Unlike non-policy making career positions, "political positions" are terminable without cause when political affiliation is an appropriate requirement for the position. *Elrod*, 427 U.S. at 362–63, 96 S.Ct. 2673; *Galloza*, 389 F.3d at 28–29. Thus, the *Branti/Elrod* defense is designed to

ensure that "representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." *Elrod,* 427 U.S. at 367, 96 S.Ct. 2673.

For purposes of this opinion the Court assumes, without deciding, that there is sufficient competent evidence that political affiliation motivated Ms. Vega Marrero's dismissal. The controlling issue is whether or not her position, in light of the responsibilities inherent in that position, is one protected from patronage demotion.

■ In determining whether a position is "political," the Court must engage in a two-step inquiry: (1) whether the governmental unit decides "issues where there is room for political disagreement on goals or their implementation;" and (2) whether the position's responsibilities "resemble those of a policy maker, [ ] privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." *Ruiz–Casillas,* 415 F.3d at 132; *See also Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241–242 (1st Cir.1986); *Galloza,* 389 F.3d at 29–30; *Duriex–Gauthier v. Lopez–Nieves,* 274 F.3d 4, 9 (1st Cir.2001).

■ In determining the second prong, the Court must examine the position's "inherent attributes." The position's job description is the most useful starting point for that analysis. *Ruiz–Casillas,* 415 F.3d 127, 132 (1st Cir.2005); *Galloza,* 389 F.3d at 31. "We have observed that the job description is the best, and sometimes dispositive, source for identifying the functions of the positions." *Hadfield v. Mc-Donough,* 407 F.3d at 17 n. 3. "If a formal job description exists, it is important for an inquiring court to look to the specifics of that document". *Galloza,* 389 F.3d at 30 (*citing Jimenez Fuentes,* 807 F.2d at

242). Job descriptions that are broad or open ended—given the employee's latitude to exercise discretionary judgment—generally indicate a policymaking position, while job descriptions that are narrowly circumscribed inhibit freedom of action and generally indicate a non-policymaking position. *Id.; Ruiz–Casillas,* 415 F.3d at 132.

■ The position's title, however, is not necessarily dispositive in the inquiry. "To differentiate between policymakers and non-policy-makers, we assay a wide array of factors, including the relative compensation level for the position, the technical expertise (if any) required to do the job, the extent to which the position involves supervision and control over others, the degree to which the position confers authority to speak in the name of higher-ups who themselves are policymakers, the influence of the position over programs and policy initiatives, and the public perception of what the position entails." *See Galloza,* 389 F.3d at 29–30. This inquiry focuses not on what functions a particular occupant of the position may in fact carry out from time to time, but, rather, **on the essential attributes of the position itself.** *Id.* at 30 (*citing O'Connor v. Steeves,* 994 F.2d 905, 911 (1st Cir.1993) and *Jimenez Fuentes,* 807 F.2d at 242). *See also Alamo Hernandez v. Hernandez,* 664 F.Supp. 646, 649–650 ("[f]or purposes of the *Elrod–Branti* exceptions, only the inherent powers of a job are important"); *Ruiz–Casillas,* 415 F.3d at 132 ("In determining the second-prong, we examine the position's 'inherent attributes')"; *Branti,* 445 U.S. at 518, 100 S.Ct. 1287 (whether a government position is "political" does not depend upon such loose-fitting labels as "confidential" or "policymaking," but on the **substance of the duties inherent in the position itself**).

Finally, and as explained in *Hadfield,* "the cases have regularly upheld against First Amendment challenge[s] to dismissal on political grounds of mid- or upper-level officials or employees who are significantly connected to policymaking". "[A]n employee is not immune from termination merely because the employee 'stands apart from partisan politics', is not the ultimate decision-maker in the agency, or is guided in some responsibilities by technical or professional standards. It is enough that the official is involved in policy, if only as an adviser, implementer or spokesperson." *Hadfield,* 407 F.3d at 16.

In this case, the record contains a description of Ms. Vega Marrero's responsibilities. (Docket No. 25, Exh. E and Docket No. 52, Exh. E). Her official job description as a Local Manager of the Consortium included, among others, the following duties: Participates in the development and implementation of public policy; manages and supervises all the operations and activities developed at the local office; exercises a high degree of her own judgment and criteria in the performance of her duties; works under the supervision of the Executive Director.

In addition, and pursuant to the official job description, a Local Manager's duties involve, among other things, the following:-Manage, plan, coordinate, and supervise all operations carried out in a local office;

— Participate in the formulation and implementation of public policy related to the development of the operations of the local office to which they are assigned;

— Develop the work plan of the center;

— Assign and supervise the programmatic and administrative activities;

— Supervise the personnel assigned to the center;

— Make sure that the activities are carried out according to law, regulations, and established procedures;

— Keep the Executive Director and the Mayor informed of the activities planned at the center;

— Control expenses in keeping within the assigned budget.

Ms. Vega Marrero contends, however, that the duties she **actually** performed demonstrate that as a Local Manager she was not involved in the formulation of public policy. Further, she argues that she never worked close to the Executive Director or the Mayors and that her work "was executed according to precise directives or instructions given by the Central Office and the Board of Mayors and within the narrow margin of federal rules applicable to the WIA program". (*See* Docket No. 21, 9 and Docket No. 22, 7–9.)

Defendants, on the other hand, claim that the Consortium is governed by a Board of Mayors, comprised by the chief executive of each of the member municipalities where the partisan majority establishes the Consortium's policy. They further allege that given the degree of partisan control over Consortium affairs, "the need to allow the constitutional flexibility set forth in *Branti* for the implementation of policy and administrative goals, applies in all [sic] force". (*See* Docket No. 3, p. 10.)

Defendants claim that the official job description for the position of Local Office Manager reveals that "the delicate matters handle[d] by the Manager of a Local Office are of such nature that a person not identified with the policy goals of the current administration may easily use his/her power to severely hamper the implementation of the incoming government". *Id.*

Because of the significant implications of the WIA funds in the municipal economy,

the operation of the Local Office is perforce of utmost importance to the mayor's policies. *See Gonzalez–Caratini v. Garcia–Padilla,* Civil No. 02–1016(RLA) (D.P.R. November 30, 2005) (unpublished order). Therefore, local managers are required to work closely with the corresponding mayor in implementing policies established by the mayor regarding the WIA funds. An evaluation of her job description clearly demonstrates that, as a Local Manager, Ms. Vega Marrero was responsible for supervising all operations and activities developed at the local office; participating in the development and implementation of public policy related to the operations of the local office; developing the work plan of the center; supervising the personnel assigned to the center; and keeping the Executive Director and the Mayor informed of the activities planned at the center.

Those are not purely mechanical or ministerial functions. Rather, her job description demonstrates the wide sweep of discretionary powers inherent in the position of a Local Manager. In addition, her responsibilities are not narrowly circumscribed, but are open-ended and afford the position's occupant considerable leeway for discretionary policymaking. *Ruiz–Casillas,* 415 F.3d at 132. *See also, Gonzalez–Cartini,* Civil No. 02–1016(RLA) (D.P.R. November 30, 2005) (unpublished order).

Finally, the duties plaintiff **"actually"** performed are irrelevant; the Court's analysis must focus upon the "essential attributes" of the position itself and not on what functions a particular occupant of the position may in fact carry out from time to time. *O'Connor,* 994 F.2d at 911.

"A new administration should not be overly hamstrung in filing key positions with loyal employees simply because of the way the prior administration operated . . . This is why the *Branti* analysis eschews reliance on 'what functions a particular occupant of the position may in fact carry out from time to time' in favor of focusing on 'the essential attributes of the position' ". *Hadfield,* 407 F.3d at 18. *See also Gonzalez–Caratini,* Civil No. 02–1016(RLA) (D.P.R. November 30, 2005) (unpublished order), at 18.

Based on these facts, the Court concludes that political affiliation was an appropriate requirement for the position of Local Manager and the termination of Ms. Vega Marrero's contract did not violate her First Amendment rights. Accordingly, Defendants' summary judgment request with respect to Ms. Vega Marrero's First Amendment claim is hereby **GRANTED.**

■ Ms. Vega Marrero's due process claim, however, is a different story. Prior to her employment as a Local Manager in the Consortium, and since 1994, Ms. Vega Marrero worked for the Municipality of Vega Baja as a career employee. (*See* Docket No. 22, Exh. A). In addition, she argues that on February 18, 2003, she was **"transferred"** from the Municipality to a **career** position at the Consortium.[4] In her sworn statement, Ms. Vega Marrero states that when she accepted the position as a Local Manager at the Consortium, the position " . . . was not classified as a career or trust [position] according to the contract" and that it was not until June 2003 (four months after she began to work at the Consortium) that the position was classified as a trust position. (*See* Docket No.

---

**4.** Docket No. 21; *See also* Docket No. 21, 2 and Docket No. 22, 2. Pursuant to Rule 56, any testimony used in a motion for summary judgment must be admissible in evidence, i.e., based on personal knowledge and otherwise not contravening evidentiary principles. *Rivera Abella,* 470 F.Supp.2d at 90–91.

22, Exh. I). She also asserts that the job description that she was given when she began to work with the Consortium demonstrates that her position was not a trust position when she was "transferred" in February 2003 from the Municipality to the Consortium.[5]

What Ms. Vega Marrero claims is that when the Local Manager position was classified as a trust position in June 2003, she already held a *career* position in the Consortium since February, 2003, when she began to work at the Consortium. Consequently, she alleges to have a legitimate expectation of continued employment in her position at the Consortium because it was a career position. *See*, P.R. Laws Ann. tit. 3 § 1350. Ms. Vega Marrero further claims that she had a right to remain employed by the Consortium "because she arrived as a career employee" inasmuch as she held a **career** position in the Municipality of Vega Baja.[6]

Defendants, on the other hand, argue that Ms. Vega Marrero was not "transferred" from the Municipality to the Consortium and that Ms. Vega Marrero's job description (Exh. E of the motion for summary judgment) is the **only** official job description of the Local Office Manager position. They contend that "regardless of the career nature of her former position with the Municipality of Vega Baja, her new position with the Consortium (the only she ever held thereat[sic] ) was a trust position of free selection and free removal.

Plaintiff made a deliberate and knowing decision to accept the trust position of Local Office Manager at the Consortium, leaving behind the guarantees offered by her former career position at the Municipality,"[7] and that she is not eligible for reinstatement to a career position with the Consortium because there was no career position to which Ms. Vega Marrero could be reinstated.

Although Ms. Vega Marrero cannot establish a legally recognized expectation that she would retain her *trust* position with the Consortium, she may have had a legitimate expectation of continued employment if, as she alleges, her prior position with the Consortium was a career position. There are disputed facts and questions of credibility regarding Ms. Vega Marrero's duties when she began to work at the Consortium that preclude summary judgment.[8] There are also disputed facts regarding her statement that she was "transferred" from the Municipality of Vega Baja to the Consortium. Therefore, the Court cannot grant summary judgment for defendants in the face of such disputed facts.

In sum, Ms. Vega Marrero has established a credibility issue encompassing the weighing of evidence which must be entertained by the jury; the Court is precluded from engaging in such an analysis at this stage of the proceedings. Because credibility issues fall outside the scope of summary judgment, the Court cannot grant

---

5. See, Docket No. 52, Exh. C (Contract between the Consorcio Dorado–Manati and Vega Marrero) and Docket No. 52, Exh. D (the job description that, according to Ms. Vega Marrero, was given to her when she was "transferred" to the Consortium).

6. *See*, Plaintiff's Statement of Contested Facts, Docket No. 21–3, 18 and Docket No. 21–2, p. 13.

7. *See*, Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Docket No. 23, p. 3.

8. As previously stated, it is Ms. Vega Marrero's contention that she was given a job description when she was transferred to the Consortium that demonstrates that she held a non-policymaking position while defendants argue that there is only one official job description for the Local Manager position.

defendants' request for dismissal on the due process issue. *Rivera Abella*, 470 F.Supp.2d 86 (D.P.R.2007) ("... [O]nly if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue to any material fact may the court enter summary judgment.")

Therefore, the Court **DENIES** Defendants' Motion for summary judgment request on Ms. Vega Marrero's Due Process claim.

### E. *Qualified Immunity*

■ The same triable issues of facts that preclude summary judgment for defendants on Ms. Vega Marrero's due process claim, preclude summary judgment for defendants on the issue of qualified immunity.

■ The qualified immunity doctrine protects government officers and employees from suit on federal claims for damages where, in the circumstances, a reasonable official could have believed his conduct was lawful. *Olmeda v. Ortiz–Quiñones*, 434 F.3d 62 (1st Cir.2006); *Rodriguez–Rodriguez v. Ortiz–Velez*, 391 F.3d 36, 41 (1st Cir.2004).

■ A three-step process exists for evaluating qualified immunity claims: 1) whether the claimant has alleged the deprivation of an actual constitutional right; 2) whether the right was clearly established at the time of the alleged action or inaction; and, 3) if both these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right. *See, Vazquez–Valentin v. Santiago–Diaz*, 459 F.3d 144, 154, n. 6 (1st Cir.2006)(citing *Wilson v. City of Boston*, 421 F.3d 45, 52–53 (1st Cir.2005)).

Due to the factual disputes regarding a possible violation of plaintiff's due process rights, the Court cannot grant defendants' motion for qualified immunity at this time. If Ms. Vega Marrero held a career position at the Consortium before her employment contract was terminated, defendants may not be entitled to qualified immunity. They may have had a duty to inquire whether Ms. Vega Marrero did, in fact, hold a career position as a local manager with the Consortium (as she alleges) before she accepted the trust position in June, 2003. *See,* P.R. Laws Ann. tit. 3 § 1350 and Section 8.2(5) of the "Human Resources Regulations for Regular and Trust Employees of the Dorado Manati Consortium (North Central)".[9] Such a

---

9. Section 1350 of Title 3 of the Laws of Puerto Rico Annotated, states, in pertinent part:
 (a) Any employee with a regular status in the Career Service who enters the Confidential Service shall have the absolute right to be reinstated in a regular position equal to the last position he/she held while in the Career Service, unless his/her removal from confidential office had resulted from charges brought against him/her. Provided, That he/she shall be entitled to all the classification and salary benefits extended to the position he/she held for the term during which he/she served in a confidential position."
 In addition, Section 8.2(5) of the "Human Resources Regulations for Regular and Trust Employees of the Dorado Manati Consortium (North Central)" establishes that "[i]f an employee in the regular service goes to the trust service, and subsequently he is separated from his last service, he will have a right to be reinstated to a position of like classification similar to the one he occupied in the regular service at the time on which he went to work in the confidence or trust service. The reinstatement of the employee in the regular service in conditiones [sic] upon the availability of existent funds at the time of transition. The responsibility of the reinstatemente [sic] of the employee will correspond to the Consortium who will have to exhaust all resources for the reinstatement of the employee in any of it s[sic] programs or dependencies.

finding would establish that an objectively reasonable municipal official should not have acted as the defendants did. Therefore, defendants' motion for summary judgment is **DENIED** without prejudice with respect to their defense of qualified immunity.

### E. *State Law Claim—Law 100*

 Puerto Rico's Law 100, seeks to prevent discrimination in the workplace by reason of age, race, color, religion, sex, social or national origin or social condition. *See*, P.R. Laws Ann. tit. 29 § 146. Law 100 only applies to employers. The term employer is defined as:

> "any natural or artificial [sic] person employing laborers, workers or employees, and the chief, official manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or artificial [sic] person. It shall include all such agencies or instrumentalities of the Government of Puerto Rico as may be operating as private businesses or enterprises".

Puerto Rico's Law 100 does not apply to municipalities, or to municipal officials when they are sued in their official capacities. *See Rodriguez Cruz v. Padilla Ayala*, 125 D.P.R. 486, 509–510 (1990) (A "municipality" does not operate for profit, as do private businesses, but for public service purposes. Consequently, Act No. 100 does not apply to municipalities); *Marin–Piazza v. Aponte–Roque*, 873 F.2d 432, 436 (1st Cir.1989); *Rodriguez Sostre v. Municipio de Canovanas*, 203 F.Supp.2d 118, 119 (D.P.R.2002); *Gomez–Vazquez v. Diaz–Colon*, 91 F.Supp.2d 481 (D.P.R. 2000)(Law 100 simply does not apply to municipalities). The same analysis may be applied with respect to the Consortiums, because they do not operate as private businesses or for profit, but to administer employment and training programs.

The Supreme Court of Puerto Rico, however, has expressly considered the question on supervisor liability under Law 100. Specifically, in *Rosario Toledo v. Distribuidora Kikuet*, 151 D.P.R. 634 (2000), the Supreme Court of Puerto Rico held that, contrary to the majority interpretation of Title VII, Puerto Rico's law against discrimination in the workplace, Law 100, does provide for the imposition of supervisor liability on the president of a corporation when he is the supervisor of the plaintiff, and is **personally responsible** for causing the plaintiff's injury. The Court's holding, in fact, was later extended to include not only the actual employer or the owner and the president of the corporation, but also any other person responsible for the illegal conduct, without any distinction. *See, Rosario Toledo v. Distribuidora Kikuet, Inc.*, 153 D.P.R. 125 (2001); *See also Pacheco Bonilla v. Tooling & Stamping, Inc.*, 281 F.Supp.2d 336 (D.P.R.2003).

Therefore, according to the cited case-law, plaintiff's Law 100 claims against the municipalities, the Consortium and the defendants in their official capacities are hereby **DISMISSED WITH PREJUDICE.**

 In their Motion for Summary Judgment defendants Sanchez, Ruiz–Manzano and Ramirez–Cardona contend that they are not subject to liability under Law 100 in their personal capacities inasmuch as "[l]aw 100 operates against **employers,** a label that does not fit any of the appearing **individual-capacity** defendants" (Em-

---

In any event the reinstatement of the employee in the regular service must be done simultaneously with the separation from the position of trust and must not result onerous to the employee". *See,* Docket 52, Exh. 2, p. 24.

**172**

phasis in original). The cited case-law, however, demonstrates that under Law 100 individual employers or supervisors may be held personally liable.[10] Therefore, defendants' request for summary judgment of Ms. Vega Marrero's Law 100 cause of action against them in their individual capacities is hereby **DENIED.**

In sum, defendants' request for summary judgment regarding this issue is **GRANTED IN PART AND DENIED IN PART.** Defendants Sanchez's, Ruiz–Manzano's, and Ramirez–Cardona's petition for dismissal of Ms. Vega Marrero's cause of action under Law 100 for lack of individual liability is hereby **DENIED.** Defendants' request for dismissal of her cause of action under Law 100 against defendants in their official capacities, the Municipalities and the Consortium is hereby **GRANTED.**

### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** defendants' motion for partial summary judgment. Ms. Vega Marrero's First Amendment claim is hereby **DISMISSED WITH PREJUDICE.** Her Law 100 claims against the Municipalities, the Consortium and defendants Sanchez, Ruiz–Manzano and Ramirez–Cardona **(in their official capacities)** are hereby **DISMISSED WITH PREJUDICE.** The individual defendants' motion for summary judgment is **DENIED WITHOUT PREJUDICE** with respect to their defense of qualified immunity. Defendants' request to dismiss Ms. Vega Marrero's due process claim is **DENIED.**

**IT IS SO ORDERED**

---

**10.** Plaintiff did not reply to defendants' arguments regarding Law 100 in her Opposition to Defendants' Motion for Summary Judgment.