**Carmen M. OCASIO–HERNANDEZ, et al., Plaintiffs,**

**v.**

**Luis FORTUNO–BURSET, et al., Defendants.**

**Civil No. 09–1299 (GAG/JA).**

United States District Court, D. Puerto Rico.

Aug. 4, 2009.

---

Eduardo A. Vera–Ramirez, Eileen Landron–Guardiola, Luis A. Rodriguez–Munoz, Landron & Vera LLP, Guaynabo, PR, for Plaintiffs.

Carlos Del–Valle–Cruz, Rivera & Association, Isabela, PR, for Plaintiffs/Defendants.

Claudio Aliff–Ortiz, Eliezer Alberto Aldarondo–Lopez, Eliezer Aldarondo–Ortiz, Ivan M. Castro–Ortiz, Michael C. McCall, Aldarondo & Lopez Bras, Guaynabo, PR, for Defendants.

### *OPINION AND ORDER*

GUSTAVO A. GELPÍ, District Judge.

On June 12, 2009 the plaintiffs in this case, fourteen former maintenance and domestic employees of the Governor's mansion ("La Fortaleza"), filed an amended complaint against all defendants, in both their individual and official capacities: Luis Fortuño–Burset ("Fortuño"), Governor of the Commonwealth of Puerto Rico, Luce Vela ("Vela"), the Governor's wife and First Lady of the Commonwealth of Puerto Rico, Velmarie Berlengeri–Marin ("Berlengeri"), Administrator of La Fortaleza, and Juan Carlos Blanco ("Blanco"),

Chief of Staff at La Fortaleza. The plaintiffs claim that the defendants terminated their employment because of their political affiliation. They bring this action pursuant to 42 U.S.C. § 1983, alleging violations of their rights to due process, equal protection, and freedom of political expression under the Constitution of the United States, as well as several Puerto Rico laws and the Constitution of the Commonwealth.

Presently before the court is defendants' motion to dismiss plaintiffs' claims pursuant to Rule 12(b)(6) (Docket No. 61), which was timely opposed by plaintiffs (Docket No. 66). For the reasons set forth herein, the court **GRANTS** defendants' motion to dismiss (Docket No. 61).

## I. Relevant Background as Alleged in the Amended Complaint

Prior to the general elections of November 2008 all of the plaintiffs were employed at La Fortaleza as public employees that performed maintenance or housekeeping functions. None of the plaintiffs performed public policy functions while employed at La Fortaleza, nor did they have access to confidential information concerning public policy making. On January 2, 2009, Fortuño, President of the New Progressive Party ("NPP"), assumed office as Governor of Puerto Rico. Governor Fortuño appointed Berlengeri Administrator of La Fortaleza, while Blanco was appointed Chief of Staff. On February 27, 2009, twelve of the fourteen plaintiffs in this case received a letter, signed by Berlengeri, informing them that they had been terminated in their employment. The remaining two plaintiffs received an identical letter on March 11, 2009. Plaintiffs allege that Blanco answered questions from the press about the La Fortaleza employment terminations and stated that plaintiffs had

been dismissed because they were privy to confidential information.

Plaintiffs further allege that, while all four defendants belong to the NPP, each and every plaintiff was either a member, or believed to be a member, of the Popular Democratic Party ("PDP") at the time of their dismissal. Plaintiffs allege that certain facts, considered either by themselves or in combination, point to the conclusion that the defendants had this knowledge or belief. First, plaintiffs were terminated from employment less than sixty days after defendants assumed administration and control of La Fortaleza, a period so brief that defendants must have been motivated by their beliefs regarding plaintiffs' political associations. Second, all of the plaintiffs were dismissed through termination letters that fail to state a reason for the dismissal. Third, plaintiffs were allegedly substituted immediately in their positions as domestic and maintenance employees by members of the NPP, without any previous evaluations as to performance or efficiency. Notwithstanding this allegation, plaintiffs do not provide any factual allegations to indicate how they are aware of their replacements' political affiliations, or of the immediacy of the replacements, if at all. Fourth, plaintiffs allege that there was a politically charged atmosphere at La Fortaleza, evinced by the display at La Fortaleza of logos and flyers allusive to the NPP and Fortuño, and the conduct of Berlingeri's assistant, Mr. Jose Luis Rodriguez, who used a cellphone with the NPP colors and emblem and could frequently be heard singing the jingle for Fortuño's electoral campaign. Mr. Rodriguez and the defendants, including the Governor, allegedly asked some of the plaintiffs how and when they began working at La Fortaleza, in order to corroborate their political adherence. Plaintiffs also allege that defendants Vela, Berlingeri, and Blanco

made disparaging remarks about the prior PDP administration.

## II. Standard of Review

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. *Parker v. Hurley*, 514 F.3d 87, 90 (1st Cir.2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

In sum, when passing on a motion to dismiss the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense. *Id.* at 1949–50 (citing *Twombly*, 550 U.S. at 555–56, 127 S.Ct. 1955). In applying these principles, courts may first separate out merely conclusory pleadings, and then fo-cus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief. *Iqbal*, 129 S.Ct. at 1950, 129 S.Ct. 1937.

## III. Discussion

### A. Section 1983

■ Plaintiffs bring their claims for the violation of their constitutional rights pursuant to section 1983. This disposition "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State [...].' " *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (quoting 42 U.S.C. § 1983). In order for a claim to be cognizable under section 1983, a plaintiff must plead and prove three elements of the cause of action: (1) that the defendants acted under color of state law; (2) that plaintiffs were deprived of federally protected rights, privileges or immunities; and (3) that the defendants' alleged conduct was causally connected to the plaintiff's deprivation. *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 558 (1st Cir. 1989).

■ The first element is satisfied in this case against all defendants because the plaintiffs alleged that all four defendants are officials of La Fortaleza and that they acted in their capacity as such to terminate plaintiffs from their employment. The second element shall be discussed at subsection B, *infra*. The third element— causal connection—, is minimally satisfied as to defendant Berlingeri, since plaintiffs allege that she signed the letter which officially separated the plaintiffs from their employment at La Fortaleza. It is not satisfied, however, as to defendants Fortuño, Vela, and Blanco. Because of the positions that these defendants hold within the

governor's mansion, plaintiffs make an implicit assumption that defendants' participated in the decision to terminate the plaintiffs' employment. However, there are no additional factual allegations, such as interactions between the defendants and particular plaintiffs, to tie Fortuño, Vela, and Blanco to the deprivation of the plaintiffs' constitutional rights. The allegation that all of the defendants asked all of the plaintiffs about how and when they began working at La Fortaleza is a generic allegation, made without reference to specific facts that might make it "plausible on its face." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). Plaintiffs' assumption is, therefore, insufficient to sustain a section 1983 claim.

Plaintiffs bolster the implicit participation argument as to the First Lady by reference to the Act to Create the Governor's Advisory Committee for the Restoration, Preservation, and Improvement of La Fortaleza, P.R. Laws Ann. tit. 3, § 18d, which provides that the First Lady shall direct a Committee also comprised by the Administrator, that oversees all conservation and maintenance work performed at La Fortaleza. Plaintiffs also cite the organigram submitted to the Transition Committee, which places the First Lady as overseer of La Fortaleza. Notwithstanding the cited legal disposition and administrative communication, plaintiffs' allegations remain conclusory, since no additional facts are alleged to suggest

that she in fact participated in the decision.[1]

In the absence of a properly articulated claim against Fortuño, Vela, and Blanco, the court **DISMISSES** all of the plaintiffs' section 1983 claims against these defendants.

### B. Political Discrimination

■ The First Amendment right to freedom of speech protects non-policymaking public employees from adverse employment decisions based on political affiliation. *See Padilla–García v. Guillermo Rodríguez,* 212 F.3d 69, 74 (1st Cir.2000); *see also Rutan v. Republican Party of Ill.,* 497 U.S. 62, 75–76, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Branti v. Finkel,* 445 U.S. 507, 516, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 354, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The *Mount Healthy* two-part burden-shifting framework for analyzing free speech claims is the method used to evaluate claims of political discrimination. *Padilla–García,* 212 F.3d at 74; *cf., Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (applying the two-part burden-shifting analysis to a free speech claim). The plaintiff must first show, through direct or circumstantial evidence, that he or she engaged in constitutionally protected conduct and that political affiliation was a substantial or motivating factor behind the challenged employment action. *Gonzalez–De–Blasini v. Family Dept.,* 377 F.3d 81, 85 (1st Cir.2004); *Rodriguez–Rios v. Cordero,* 138 F.3d 22, 24 (1st Cir.1998). "If [the plaintiff] does so, then the defen-

---

1. Allegedly, defendant Vela also made comments to the press that she had overseen the repairs of certain parts of La Fortaleza, and was overheard by one of the plaintiffs stating that they were going to "clean up the kitchen." These alleged facts, however, are insufficient to show that the First Lady was involved in the decision to terminate the plaintiffs. While the first is of little relevance to whether or not defendant Vela actually participated in the decision to terminate, the second is an ambiguous remark that does not necessarily refer to the dismissals at issue in this case.

dant is given the opportunity to establish that it would have taken the same action regardless of the plaintiff's political beliefs—commonly referred to as the *Mt. Healthy* defense." *Padilla–Garcia*, 212 F.3d at 74.

■ To establish a *prima facie* case, the plaintiff must show, or (for the purposes of Rule 8(a)(2)) properly plead, that (1) the plaintiff and the defendant belong to opposing political affiliations, (2) the defendant has knowledge of the plaintiff's affiliation, (3) a challenged employment action occurred, and (4) political affiliation was a substantial or motivating factor behind the challenged employment action. *Martinez–Velez v. Rey–Hernandez*, 506 F.3d 32, 39 (1st Cir.2007) (citing *Peguero–Moronta v. Santiago*, 464 F.3d 29, 48 (1st Cir.2006) (quoting *Gonzalez–De–Blasini*, 377 F.3d at 85–86)). Here, plaintiffs have alleged all four elements of the *prima facie* case: (1) the defendants are all NPP members, while the plaintiffs are members of the PDP; (2) the defendants knew, or believed they knew, of the plaintiffs' political affiliation to the PDP (or non-affiliation with the NPP); (3) the plaintiffs were terminated from their employment; and (4) the defendants terminated the plaintiffs because of their political affiliation. Defendants challenge plaintiffs's allegations as conclusory and insufficiently plausible. The court agrees. In particular, plaintiffs' allegations as to the second and fourth elements of their *prima facie* case do not pass the test for sufficiency set out in *Iqbal*. *See generally Thomas v. Rhode Island*, 542 F.3d 944, 948–49 (1st Cir.2008) (applying *Twombly* in a section 1983 action); *Morales–Tanon v. Puerto Rico Electric Power Authority*, 524 F.3d 15, 18–20 (1st Cir. 2008) (same); *Perez–Acevedo v. Rivero–Cubano*, 520 F.3d 26, 29–30 (1st Cir.2008) (same); *see also Febus–Cruz v. Sauri-*

*Santiago*, —— F.Supp.2d ——, 2009 WL 2195779 (D.P.R.2009).

■ The court is unpersuaded by plaintiffs' theory that the facts alleged, seen as a whole, would suffice to conclude that Berlengeri knew of the plaintiffs' party affiliation (or lack thereof). The fact that Berlengeri may have made disparaging remarks about the previous administration does not lead to the conclusion that she thought or knew that plaintiffs were PDP members or supporters. The same can be said of the allegation that her assistant was a staunch PNP supporter, wore the party's logo, and sang Fortuño's campaign jingle. Similarly, the alleged fact that Berlengeri and the other defendants questioned the plaintiffs about how and when they began working at La Fortaleza does not lead to the conclusion that they did so in order to ascertain their political affiliation, or that they in fact gained that information. What is more, the amended complaint contains no specific account of these conversations; plaintiffs instead rely on generic, blanket statements as to all fourteen plaintiffs. Also, plaintiffs do not identify who replaced any or all of the plaintiffs, nor the date of these replacements; plaintiffs merely present a conclusory statement that this occurred as to all of the plaintiffs.

■ Plaintiffs' factual allegations pertaining to the fourth element of their political discrimination claim—discriminatory animus—are similarly unpersuasive. In their *Motion in Compliance With Order Requesting Permission to Withdraw Without Prejudice Due Process Claim*, plaintiffs represented to this court that the positions they previously held at La Fortaleza are classified as positions of trust "under the relevant Commonwealth per-

sonnel laws." [2] (Docket No. 40 at 1) As trust employees, plaintiffs were not entitled to any explanation upon removal from their employment, nor is it relevant that the defendants failed to evaluate plaintiffs' performance before deciding to terminate their employment. Furthermore, the First Circuit has held that "[m]ere temporal proximity between a change in administration and a public employee's dismissal is insufficient to establish discriminatory animus." *Peguero–Moronta*, 464 F.3d at 53 (quoting *Acevedo–Diaz v. Aponte*, 1 F.3d 62, 69 (1st Cir.1993)).

Since plaintiffs have failed to make a fact-specific showing that a causal connection exists between their termination from employment and their political affiliation, all of plaintiffs' section 1983 political discrimination claims against defendant Berlengeri are **DISMISSED**.

## C. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment protects government employees who possess property interests in continued public employment. *See Ruiz–Casillas v. Camacho–Morales*, 415 F.3d 127, 134 (2005) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Galloza v. Foy*, 389 F.3d 26, 33 (2004)). "To determine whether public employees possess such a property right, we must examine the local law and the terms and conditions of the employment arrange-

ment." *See Ruiz–Casillas*, 415 F.3d at 134 (citing *Loudermill*, 470 U.S. at 541, 105 S.Ct. 1487; *Ortiz–Piñero v. Rivera–Arroyo*, 84 F.3d 7, 17 (1st Cir.1996)). As discussed *infra*, plaintiffs have represented to this court that the positions they previously held at La Fortaleza are classified as trust positions "and as such [plaintiffs] do not have a property interest under state law to which due process attaches." (Docket No. 40 at 1) Moreover, in its May 14, 2009 order (Docket No. 43) this court held that "under Puerto Rico law as it stands today, plaintiffs do not have a property interest in their positions," (Docket No. 43 at 1) [3] and dismissed plaintiffs' due process claims with prejudice.

Having no property right to continued employment, plaintiffs are not entitled to a procedural due process claim stemming from their dismissals. Therefore, the court **DISMISSES** plaintiffs' due process claims against all defendants.

## D. Equal Protection

The amended complaint references a violation of the plaintiffs' rights to equal protection but it provides no specific factual allegations to distinguish their equal protection claim from their political affiliation claim. Plaintiffs' failure or inability to make this distinction is dispositive of the equal protection claim; where there is no distinct basis for alleging an equal protection violation, that claim is subsumed by the First Amendment claim. *See Pagan v.*

---

**2.** In complete contradiction to what they previously represented to this court, plaintiffs now allege in their amended complaint that the "Classification Plan at La Fortaleza [ ] considers conservation and maintenance employees (i.e., "trabajador de conservación," "trabajador de mantenimiento," among others) career positions and subjects appointment to merit system recruitment." (Docket No. 56 at 56 ¶ t) In as much as this new allegation is inconsistent with plaintiffs' previous representations to this court as to the

nature of their employment at La Fortaleza, and no explanation was given for this obvious contradiction, the court relies on plaintiffs' previous theory and considers the positions at issue in this case to be trust positions under the relevant state laws.

**3.** Plaintiffs did not seek to certify this issue to the Puerto Rico Supreme Court. *See* P.R. Laws Ann. tit. 4, ap. XXI–A, R. 25.

*Calderon,* 448 F.3d 16, 36–37 (1st Cir.2006) ("so long as [plaintiffs'] allegations of political discrimination fit within the contours of the First Amendment, they are, *a fortiori,* insufficient to ground a claim that the politically-inspired misconduct violated equal protection guarantees."). In an attempt to step out of the confines of clear First Circuit precedent on this point, plaintiffs, in their opposition to the motion to dismiss, argue that they may raise an equal protection claim because they are a "class of one."

Plaintiffs cite to *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (involving a landowner's challenge to a village's demand for a 33–foot easement as a requirement for water service), *Allegheny Pittsburgh Coal Co. v. County Comm. Of Webster County, West Virginia,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989) (involving a landowner's challenge to a local tax assessment), and *Sioux City Bridge Co. v. Dakota County, Neb.,* 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923) (same) in support of their class of one claim. These cases recognize a claim for those "class of one" plaintiffs who "allege [ ] that [they have] been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech,* 528 U.S. at 564, 120 S.Ct. 1073 (internal citations omitted). These cases relied on the principle that the Fourteenth Amendment secures every person "against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Id.* Although plaintiffs have alleged that the defendants intentionally discriminated against them, they have failed to allege that other similarly situated people were treated differently. As such, they fail to allege a minimally sufficient claim in even conclusory terms, let alone

support the claim with facts raising a plausible claim to relief. They also fail to explain (perhaps because it is well-nigh impossible) why an equal protection doctrine applied to protect real property owners against actions by local authorities should be applied to a claim for employment discrimination. *See Febus–Cruz,* —— F.Supp.2d ——, —— – ——, 2009 WL 2195779, at *8–9 (reaching the same conclusion in a political discrimination case).

Therefore, plaintiffs' equal protection claim, to the extent it has been alleged, is **DISMISSED.**

### E. Supplemental State Law Claims

■■■ Plaintiffs also brought suit under article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141, which imposes liability on any person or entity that "causes damages to another through fault or negligence." Employment discrimination claims can give rise to a cause of action under article 1802. *Hoyos v. Telecorp Communications, Inc.,* 405 F.Supp.2d 199, 209 (D.P.R.2005). However, for an article 1802 claim to prosper, a plaintiff must plead plausible, nonconclusory facts to sustain that a defendant's negligent or intentional acts caused a tangible harm to the plaintiff. In this case, plaintiffs' only allegation specific to this cause of action is that "[a]s a result of the Defendants' unconstitutional and illegal conduct, each of the plaintiffs have been discriminatorily terminated in his or her employment, and caused irreparable and continuing harm [ . . . ]." (Docket No. 56 at 32) Having determined that the facts alleged in the amended complaint are insufficient under *Iqbal* to properly plead discriminatory animus, and since the plaintiffs have not alleged any other factual basis for their article 1802 claim, the court must **DISMISS** plaintiffs' supplemental state law claim un-

der article 1802 for failure to state a claim upon which relief can be granted.

## IV. Conclusion

For the aforementioned reasons, the court **GRANTS** defendants' motion to dismiss all federal and supplemental claims with prejudice (Docket No. 61). Judgment shall be entered accordingly.[4]

**SO ORDERED.**

---

**4.** The court notes that its present ruling, although draconianly harsh to say the least, is mandated by the recent *Iqbal* decision construing Rules 8(a)(2) and 12(b)(6). The original complaint (Docket No. 1), filed before *Iqbal* was decided by the Supreme Court, as well as the Amended Complaint (Docket No. 61), clearly met the pre-*Iqbal* pleading standard under Rule 8. As a matter of fact, counsel for defendants, experienced beyond cavil in political discrimination litigation, did not file a 12(b)(6) motion to dismiss the original complaint because the same was properly pleaded under the then existing, pre-*Iqbal* standard. This case was, in fact, fast-tracked for a July 14 trial date (three months after the filing of the complaint) (*see* Docket No. 12) and discovery had just commenced when *Iqbal* was decided.

As evidenced by this opinion, even highly experienced counsel will henceforth find it extremely difficult, if not impossible, to plead a section 1983 political discrimination suit without "smoking gun" evidence. In the past, a plaintiff could file a complaint such as that in this case, and through discovery obtain the direct and/or circumstantial evidence needed to sustain the First Amendment allegations. If the evidence was lacking, a case would then be summarily disposed of. This no longer being the case, counsel in political discrimination cases will now be forced to file suit in Commonwealth court, where *Iqbal* does not apply and post-complaint discovery is, thus, available. Counsel will also likely only raise local law claims to avoid removal to federal court where *Iqbal* will sound the death knell. Certainly, such a chilling effect was not intended by Congress when it enacted Section 1983.